————o————

WILLIAM C. WEST, Respondent, *vs.* ST. LOUIS, KANSAS CITY AND NORTHERN RAILWAY Co., Appellant.

1. *Land titles—Division fences—Boundaries, how settled.*—Parties will not be bound by an intervening fence as a boundary dividing their lands, where they claim only to the extent of their paper title, whatever that may be, and the fence is suffered to remain simply as a matter of convenience.

*Appeal from Audrain Circuit Court.*

*W. Blodgett & M. McKeag*, for Appellant.

*Gordon & McIlhany, with E. B. Sherzer*, for Respondent.

WAGNER, Judge, delivered the opinion of the court:

This action was for a trespass alleged to have been committed by the defendant, by unlawfully entering upon a tract of land and wrongfully tearing down and carrying away a string of fence, and cutting down and destroying twelve apple trees.

The answer of the defendant denied the unlawful entry; denied that the plaintiff was the owner of and in possession of the land, and averred that it was in possession of the strip by virtue of a conveyance from one J. B. Morris to the North Missouri Railroad, and from the latter to the defendant; and for a further justification defendant alleged that it did cut

down some apple trees, and take some rails from a fence which were upon its own land and were its own property; that the rails were replaced by new ones, and that its action was necessary for the proper construction and operation of its road, and in order to build a new fence. Defendant replied, denying the new matter set up in the answer.

J. B. Morris was the primary source of title, and both parties claimed under him. The land in controversy, on which the alleged trespass was committed, is a portion of a strip fifty-six feet wide, extending from the centre of defendant's track, which the North Missouri Railroad purchased from Morris, receiving a deed therefor, dated June 6, 1861, which was duly placed upon record.

Plaintiff, to maintain the issue on his side, introduced a deed from Morris to himself, dated November 8, 1862, conveying a tract of land, of which the strip formed a part. In this deed the right of way to the railroad company is expressly reserved.

Plaintiff was then sworn and testified in his own behalf that he purchased the land described in the deed from Morris, in December, 1861, and went into possession, but did not get the deed till 1862; that at that time the railroad was located on the land, and that the old fence was standing about thirty-six feet from the track; that the rails which he claimed that the defendant took out of the old fence, were standing within fifty-six feet of the railroad, and that what he meant when he said that defendant cut off the apple trees, was that when defendant ran the new fence in the orchard, it left ten trees standing between the new fence and the railroad track, and that they were within the fifty-six feet; that only four trees were cut down in building the fence; that Morris told him that the company had paid for the old fence that was standing upon the land.

Plaintiff introduced Morris as a witness, and he testified that before plaintiff purchased, he told him that the fence around the orchard was the company's fence; that it was built there before he made the conveyance to the company;

that he and the company knew it was not fifty-six feet from the railroad, but the company paid him for it, and it was not moved back; that the company and himself did not treat the fence as the dividing line, but as it was there when he made the conveyance, they let it remain.

The defendant then introduced deeds showing a regular chain of title to itself to the strip of fifty-six feet.

The cause was submitted to the court without the intervention of a jury, and the defendant offered the following instruction: "If the court, sitting as a jury, should believe from the evidence in the case, that on the 6th day of June, 1861, John B. Morris was the owner and in possession of the land described in plaintiff's petition, and at that time conveyed to the North Missouri Railroad Company the fifty-six feet lying on the south side of, and parallel to, the centre of the tract of said railroad; and at the time of such conveyance the fence of the said Morris was standing on the land so conveyed, as well as some apple trees; and that the said North Missouri Railroad Company paid the said Morris for said fence and agreed that the same should remain on said land; and that afterwards the said Morris conveyed the land described in plaintiff's petition to the plaintiff, excepting the part so conveyed to said company, with full knowledge on the part of the plaintiff of said agreement between the said Morris and said company, then the defendant will not be liable in an action of trespass for entering upon said land and moving said fence, if by proper conveyance the defendant had acquired the title of said company to said fifty-six feet of land."

This instruction the court refused and then rendered judgment for plaintiff.

The instruction should have been given. Defendant's grantor bought the property and paid for it. Not only did it buy the real estate, but it purchased and paid for the fence also. Of all this plaintiff, when he subsequently purchased, had full notice. Plaintiff only acquired the right and title possessed by Morris, and he had previously sold the fifty-six feet including the fence to the grantor of the defendant.

There was no question of the statute of limitation in the case. The statute was not pleaded, and there was no evidence to show that either party ever intended to claim anything more than they were entitled to under their paper title.

Leaving the old fence where it first stood was obviously a mere arrangement of convenience.

The facts in the case bring it within the principle adjudged by this court in Knowlton vs. Smith (36 Mo., 507), and Kincaid vs. Downey, (51 Mo. 552).

The judgment should therefore be reversed. The other judges concur, except Judge Lewis, who did not sit.