Tom ALEY, d/b/a Ozark Underground Laboratory, Plaintiff-Appellant,

v.

HACIENDA FARMS, INC., a corporation, and John Hunter, an Individual, Defendants-Respondents.

No. 10747.

Missouri Court of Appeals, Southern District, Division One.

June 27, 1979.

Gary W. Allman, Cantwell & Allman, Branson, for plaintiff-appellant.

Bob J. Keeter, Schroff, Keeter, Glass & Newberry, P. C., Springfield, Robert Stemmons, Mount Vernon, for defendants-respondents.

TITUS, Judge.

Plaintiff's first amended petition filed March 28, 1975, asked actual and punitive damages of defendants for real estate trespass. The petition aped the description of the property recited in the March 18, 1966, deed given plaintiff by his grantors. Neither the deed nor the petition asserted that plaintiff's north property line was delineated by an agreed boundary fence. On the day trial commenced, April 6, 1977, or two years after the first amended petition was filed, the court permitted plaintiff to again amend his pleading by declaring that his north property line "was an agreed boundary fence which was upon the boundary line between Plaintiff's property and Defendant's property." The trial court directed a verdict for defendants at the close of plaintiff's evidence and plaintiff appealed. (When used in the singular hereinafter, the term "defendant" refers to Hacienda Farms, Inc., owner of property north of plaintiff's land).

Plaintiff asserts in his two points relied on: "I The trial court erred in granting defendants' motion for a directed verdict . . . because plaintiff made a prima facie case establishing the existence of a boundary line fence . . . and that defendants had trespassed on plaintiff's land . . . causing damage. II The trial court erred in sustaining defendants' objection to the testimony of Bennie Rozell concerning his survey diagram, and excluding the Rozell diagram because such evidence was admissible to establish the location of the boundary line between plaintiff's and defendant['s] property."

■ The first point relied on might be interpolated into an assertion that plaintiff made a submissible case, but the point is wholly short of spotlighting "wherein and why" plaintiff claims the necessary elements of his case (whatever they may have been) were established by prima facie evidence sufficient to establish the existence of a boundary fence line or that defendants had trespassed. Rule 84.04(d), V.A.M.R.; *Mannon v. Frick*, 365 Mo. 1203, 1212, 295 S.W.2d 158, 166[15, 16] (1956). Simply asserting abstractly that plaintiff made a prima facie or submissible case with no reason stated for the conclusion preserves nothing for appellate review [*Glastris v. Union Elec. Co.*, 542 S.W.2d 65, 69[4] (Mo.App.1976)] because the abstraction does not comply with the mandatory requirements of Rule 84.04(d) [*M & A Electric Power Cooperative v. Nesselrodt*, 509 S.W.2d 468, 470[1] (Mo.

App.1974)] which must be strictly applied. *Long v. Lincoln*, 528 S.W.2d 512, 513[1] (Mo.App.1975).

■ Plaintiff's second point relied on likewise does violence to Rule 84.04(d). Albeit states that the court erred in excluding the testimony and diagram of witness Rozell, the point's "because" clause is nothing more than an unadulterated abstraction as it nowhere undertakes to claim "wherein and why" the excluded evidence "was admissible to establish the location of the boundary line." Abstract declarations penned in briefs do not sate the mandatory requirement of the rule and appellate courts are not required to seek through the transcript on appeal or the argument portion of an appellant's brief to discover the "wherein and why" of a conclusionary asseveration. *Brewer v. Blanton*, 555 S.W.2d 381, 386[10–12] (Mo.App.1977); *Barber v. M. F. A. Milling Company*, 536 S.W.2d 208, 209–210[3–4] (Mo.App.1976).

Although the appeal should be dismissed for plaintiff's neglect to abide by the mandates of Rule 84.04(d), the *judgment nisi* may be briefly affirmed on its merits.

The so-called "agreed boundary fence" was in two segments. As described by plaintiff, "[o]ne was an east-west segment that ran a little less than two thousand feet and then there was this northwest-southeast trending piece that ran about a thousand feet." The fence, admittedly in existence for many years, ran through wooded areas from tree to tree in a zigzag fashion and across open areas from post to post in a generally straight line. As previously noted, plaintiff bought his property in 1966. Defendant, via its president, acquired its property in 1968 from the Wymans who had purchased it in 1964. None of the deeds to plaintiff, defendant or their grantors described any boundaries of their properties as consisting of the fence in question. Two surveys were made of defendant's land— one in conjunction with its purchase from the Wymans and the other at a later date. Thereafter, defendant cleared property beyond the fence, a process which removed all *but 300 feet of the fence* and obliterated its previous location.

■ When owners of adjoining land occupy their respective properties up to a certain line which they *mutually* recognize and acquiesce in for a long period of time, they may be precluded from claiming that the acquiesced in line is not the true boundary. 12 Am.Jur.2d, Boundaries, § 85, at p. 620. However, to establish a fence or other markings as an agreed boundary line by long acquiescence, there must be proof of mutual conduct or acts recognizing it as such [*Tillman v. Hutcherson*, 348 Mo. 473, 481, 154 S.W.2d 104, 108[8] (1941)], and the mere acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than a boundary will not amount to an agreement as to a boundary or establish it as a true line. *Ackerman v. Ryder*, 308 Mo. 9, 27–28, 271 S.W. 743, 748[5] (1925); 11 C.J.S. Boundaries § 79, at p. 653; cf. *West v. St. L., K. C. & N. Ry. Co.*, 59 Mo. 510 (1875).

■ The failure of plaintiff's evidence lies in the fact that it wholly lacked proof of the fence ever having been mutually agreed to, recognized or acquiesced in as a boundary by any parties owning or claiming to own property on either side thereof. In fact, it was not until plaintiff sought to amend his pleading on the eve of trial that there was any formal claim made by him that the fence constituted an agreed boundary. For all that is known from the proof, the properties on either side of the fence could have been owned by the same person or persons for many years who simply used the fence as a barrier, an internal division of property, for convenience or reasons other than as a demarcation of boundaries. Also, there was absolutely no evidence that any previous owners of the lands mutually acquiesced in, agreed or considered the fence as the true dividing line. "A line may not be established by acquiescence unless there is some contention between the landowners over the location of the line as a result of which a boundary is established in which the landowners subsequently acquiesce. 'Adjoining landowners might go on for years without knowing the exact

location of their dividing line, and unless and until there is a dispute there would be no reason for establishing a line by acquiescence [or agreement].' [citations omitted] Failure to dispute the location of a fence is not necessarily acquiescence in a boundary since a fence may be placed for purposes other than fixing the boundary." *Cothran v. Burk,* 234 Ga. 460, 216 S.E.2d 319, 321[3, 4] (1975).

As to plaintiff's second point relied on it suffices to say that if the fence was not, in fact, an agreed boundary fence, then its exact location is of no moment and the trial court's exclusion of a purported survey which did not commence at a corner established by the government or reestablished pursuant to statutory methods [*Wells v. Elder,* 544 S.W.2d 258, 259[1, 2] (Mo.App. 1976)] is likewise of no moment and was not prejudicial to plaintiff.

Judgment affirmed.

FLANIGAN, C. J., and CAMPBELL, BARKER and HENRY, Special JJ., concur.