Eugene J. MOSES and Geraldine M. Moses, his wife, et al., Respondents,

v.

David W. DAWSON and Jean P. Dawson, his wife, et al., Appellants.

No. 40704.

Missouri Court of Appeals, Eastern District, Division Three.

March 18, 1980.

Thomas J. Briegel, Union, for appellants.

William W. Eckelkamp, Jenny, Cole & Eckelkamp, Union, for respondents.

DOWD, Presiding Judge.

Defendants in a court-tried case appeal from the trial court's findings of fact and conclusions of law reforming deeds to land owned by the parties.

Parties to this action are the owners of contiguous parcels of land, adjoining at

northern and southern boundaries. A common grantor, Carl Hoemann, conveyed parcels of land to the plaintiffs Moses in 1959, to the plaintiffs Fred Hinson in 1961, and to the plaintiffs Walker in 1961. In 1964, plaintiffs Fred Hinson conveyed a portion of their property to plaintiffs Donald Hinson. Property owned by the Hinsons adjoins the Moses property at the northern boundary of the Moses property. Property owned by the Walkers adjoins the Hinson property at the northern boundary of the Hinson property.

Property owned by defendants Dawson adjoins the Walker property at the northern border of the Walker property. Carl Hoemann conveyed this property to the Strains in 1971. The Strains conveyed the land to the Dawsons in 1973.

Mr. Hoemann testified that at the time of the conveyances of the Moses property, the Fred Hinson property, and the Walker property, he drove iron bars into the ground to mark corners. The land was not professionally surveyed at the time it was conveyed.

Mr. Hoemann's deed of the Moses property purported to convey approximately 4½ acres of land, described as follows:

"Part of the North East quarter of the South West quarter of Section 29, Township 43 North of Range 1 West, of the 5th P.M., more fully described as follows, to-wit:
Beginning at the Southwest corner thereof; run thence North 425 feet to stake, thence East 460 feet to the West line of roadway; thence Southwest along said roadway 425 feet to ¼ ¼ line, thence West 455 feet to the place of beginning, . . . ."

Property with such dimensions would constitute approximately 4½ acres. However, at the time the current dispute developed, no iron bars were found in the northern corners identified by the deeds. Instead, iron bars were discovered approximately 100 feet further north.

Mr. Hoemann's conveyance of the Hinson property, a portion of which was later conveyed to the Hinsons' son, described the Hinson property as follows:

"Part of the Northeast qr. of the Southwest qr. of Section 29, Township 43 North, Range 1 West of the 5th P.M., more fully described as follows, to-wit: Beginning at a stake in the West line of said qr. qr. section 425 feet North of the Southwest corner thereof, at the Northwest corner of the Moses property, thence North along the West line of said qr. qr. section 300 feet to a stake, thence East to a stake in the West right of way line of a roadway, thence Southwardly along the West line of said roadway 300 feet more or less, to the Northeast corner of the Moses property, thence West along property line to the point of beginning, containing 3.00 acres, more or less."

Mr. Hoemann's deed to the Walkers described their property as follows:

"Part of the Northeast qr. of the Southwest qr. of Section 29, Township 43 North, Range 1 West of the 5th P.M., more fully described as follows, to-wit: Beginning at a stake in the West line of said qr. qr section 725 feet North of the Southwest corner thereof, at the Northwest corner of the parcel conveyed to Fred Hinson and wife, thence North along the West line of said qr. qr. section 92 feet to a stake, thence East to a stake in the West right of way line of a roadway, thence Southwardly along the West line of said roadway, 92 feet, more or less, to the Northeast corner of the Hinson parcel thence West along property line to the point of beginning, containing 1.00 acre, more or less."

As with the Moses property, at the time the instant dispute developed, no stakes were found as described in the deeds to the Hinson and Walker property. Instead iron bars in the proportions described by the deeds were discovered approximately 100 feet further north.

The property conveyed by Mr. Hoemann to the Strains and by the Strains to the Dawsons was described by the deeds as:

"Part of the Northeast qr. of the Southwest qr. in Section Twenty-nine (29), Township Forty-three (43) North,

Range One (1) West of the 5th P.M., described as follows: Beginning at a point in the West line of said qr. qr section, 817 feet North of the Southwest corner thereof, thence East to a point in the West line of a roadway, thence North along the West line of said roadway to the North line of said qr. qr. section, thence West along said North line to the Northwest corner thereof, thence South along the West line of said qr. qr. section to the point of beginning."

Although the Dawsons' deeds do not specify that the corners of the Dawson property are marked, the placement of iron bars which plaintiffs claim mark the true corners of their properties would cause the Dawsons' southern boundary to be approximately 100 feet further north than as described by the deed. At the time the Dawsons purchased their property, they believed they were purchasing 6 acres of land. The contract of sale between the Strains and the Dawsons so indicates. Prior to this dispute, the Dawsons paid real property taxes on 6 acres of land. The proportions of the land described by the Dawsons' deeds constitutes approximately 6 acres.

The Dawsons' appeal contends the trial court's reformations of the parties' deeds to describe the boundaries between the Dawson, Walker, Hinson, and Moses parcels as approximately 100 feet further north of the corners originally described and at the places where iron bars were found driven into the ground are erroneous because not supported by the evidence. The Dawsons argue the trial court's findings and conclusions are not supported by the evidence because: (1) reformation was based upon an inadmissible land survey; (2) reformation was not supported by evidence of any agreement prior to conveyances reflecting mistake; (3) reformation would be cut-off

against bona fide purchasers such as the Dawsons; and (4) reformation would be barred by laches.

In support of their first contention, the Dawsons argue the survey of the parties' land to which the trial court referred in reforming the parties' deeds was inadmissible in evidence for failure to comply with statutory requisites. The Dawsons contend the survey was not shown to have commenced from an established government corner or corner reestablished in accordance with statutes.

At trial, a registered, private land surveyor testified concerning a survey which he prepared of the land in dispute. In response to the Dawsons' objection the survey was not tied into a known government corner, the surveyor did not indicate he had located a government monument but testified his survey was tied to the southwest corner of the northeast quarter of the southwest quarter of Section 29, Township 43, Range 1 West. The essence of the surveyor's testimony was that he used an iron pipe as the established monument and the starting point of his survey. This iron pipe is evidently the iron bar which Mr. Hoemann drove into the ground to mark the southwest corner of the Moses property.

■ Upon the record before us, the survey relied upon by the trial court in reforming the parties' deeds has not been definitely shown to have commenced from a corner established by the government or reestablished in accordance with Sections 60.290 and 60.300, RSMo 1969.[1] Such a survey lacks probative force and is inadmissible. *Carroz v. Kaminiski,* 467 S.W.2d 871, 872–3 (Mo.banc 1971); *Probst v. Probst,* 595 S.W.2d 289 (Mo.App., E.D., 1979); *State ex rel. State Hwy. Com'n v. Dunn,* 569 S.W.2d 353 (Mo.App.1978).[2]

---

1. The reorganization of Chapter 60 in 1979 clearly does not affect the disposition of this appeal from a 1978 judgment.

2. Section 60.150, RSMo 1969, establishes the admissibility of a county survey as evidence and the survey's prima facie correctness. The survey does not become conclusive evidence by meeting the requirements of Section 60.150,

RSMo 1969, and may be disproved by other competent evidence. Further, the statute does not prohibit the introduction of surveys made by private persons or public surveyors provided the correctness of such surveys has been

Having established the challenged survey in the instant case is inadmissible and lacking in probative force, we must determine if other competent evidence establishes that the "correct" boundaries of the parties' property are as alleged by the plaintiffs. *State ex rel. Hwy. Com'n v. Dunn, supra.*

The original owner of all the property now owned by the parties testified at the trial. He testified that he and Mr. Moses measured the Moses property with a metal tape measure at the time of the 1959 conveyance of the Moses property. Mr. Hoemann marked the corners of the Moses property with iron pins at that time. When Mr. Hoemann conveyed a parcel of land to his brother-in-law Fred Hinson and another to his brother-in-law Jefferson Walker in 1961, Mr. Hoemann again placed iron pins at the corners of the parcels. Mr. Hoemann lived on the parcel of land now owned by Dawsons until 1971 when he conveyed the property to the Strains, the Dawsons' grantor. Mr. Hoemann testified he informed the Strains, who did not testify at the trial, that his remaining property extended south to the pins between his and the Walker property. Mr. Hoemann said he had erected a fence along the line between the pins shortly after he conveyed the Walker property. However, Mr. Hoemann also testified he intended to convey to the Strains the property described in their deed.

In identifying the location of the iron pins and fence which Mr. Hoemann said divided the Walker and Dawson tracts, Mr. Hoemann referred to the survey which we have found inadmissible. At best, the evidence proves the existence of the iron pins and fence but not their location.[3] Independent evidence does not establish the location of the parties' boundaries. *State ex rel. State Hwy. Com'n v. Dunn, supra.* We need not reach appellant's remaining points.

The judgment is reversed and remanded for a new trial.

CRIST and REINHARD, JJ., concur.

---

established by competent evidence. *Chostner v. Schrock,* 64 S.W.2d 664, 666[6, 7] (Mo.1933); *Rhodes v. Tanner,* 591 S.W.2d 90, 92[4] (Mo. App.1979). The challenged survey in the instant case would be admissible had it been *definitely shown to have commenced from a government corner or properly reestablished corner.*

3. Implicit in respondent's oral argument that independent evidence supports the trial court's reformation of deeds is the contention the iron pins and fence constituted artificial monuments which generally control over courses and distances. *State ex rel. State Hwy. Com'n v. Dunn, supra; But cf., Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128–9[3, 4] (Mo.App. 1979) (to establish a fence or other markings as an agreed boundary by long acquiescence there must be proof of mutual conduct recognizing it as such). However, such monuments must be established and located. *State ex rel. State Hwy. Com'n v. Dunn, supra.*