William M. KELLEY, Plaintiff–
Respondent,

v.

Lowell PROCK and Glennis Prock,
Defendants–Appellants.

No. 17397.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 31, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 25, 1992.

Application to Transfer Denied
April 21, 1992.

James E. Baldwin and Mark E. Rector, Donnelly, Baldwin and Wilhite, Lebanon, for plaintiff-respondent.

Royal M. Miller and James E. Miller, James E. Miller, P.C., Springfield, for defendants-appellants.

PREWITT, Presiding Judge.

The parties are adjoining landowners who dispute both the north to south and east to west boundary lines between their property. Defendants appeal from the trial court's judgment establishing those lines.

■ As the trial court heard this matter without a jury, review is under Rule 73.-01(c). Under that rule's interpretation, this court is to affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990).

■ Due regard is given by an appellate court to the trial court's determination on the credibility of witnesses. Rule 73.-01(c)(2). The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App.1979).

Plaintiff's petition stated that he was the owner of the Southwest Quarter of Section 17 and the Southeast Quarter of the Southeast Quarter of Section 18, both in Township 32, Range 13, Laclede County, Missouri. The petition alleged that certain boundary lines had been established between the property plaintiff owned and that owned by defendants; that contrary to that agreement, "in the early spring of 1986" defendants entered upon a portion of plaintiff's land and constructed fences which deprived him of access to certain of his buildings and property. Plaintiff sought judgment restoring possession to him of the area "obtained by defendants

through the erection of ... fences," and for damages.

Defendants answered stating that "any purported agreement to change property boundary lines as alleged in Plaintiff's Petition was not in writing and would be in violation of the Statute of Frauds." Defendants requested that the court dismiss plaintiff's petition and "enter judgment in favor of Defendants". Defendants also filed a counterclaim alleging that they owned the Northeast Quarter of the Southeast Quarter of Section 18, Township 32, Range 13 in Laclede County, Missouri. They alleged that under the will of James Prock, defendant Lowell Prock's father, who owned both tracts when he died, the parties' north to south dividing line was a public road. Defendants sought an injunction enjoining plaintiff from blocking the road or interfering with defendants' use and asking for actual and punitive damages.

Plaintiff replied, admitting that defendants had constructed the new fences prior to plaintiff acquiring the property, but after plaintiff had started negotiating for its purchase. Plaintiff admitted that a portion of the road claimed by defendants to be the north to south line was a public road and otherwise generally denied the counterclaim.

The pleadings are set forth somewhat in detail because they relate to defendants' first point. Also related to that point is a stipulation of the parties that the trial "Court should ascertain the true boundaries of the parties' adjoining tracts and quiet title thereto." That stipulation is not part of the record, but was so recited in the trial court's "Findings of Fact and Conclusions of Law" and acknowledged in defendants' brief.

At the time of his death in November of 1946, James Prock owned all of the land in question. Under his will his wife, Bertha Prock, was devised it until her "death, or remarriage". The remainder interest in the Southeast Quarter of Section 18 was devised to his son, defendant Lowell Prock. The remainder interest in the Southwest Quarter of Section 17 was devised to anoth-

er son, Garland Prock. Notwithstanding the legal description, the will provided for the sons' tracts to be divided by an existing road.

On April 13, 1978, Bertha Prock conveyed her interest in the Southwest Quarter of Section 17 and the Southeast Quarter of the Southeast Quarter of Section 18 to Garland Prock and his wife. On June 26, 1978, Bertha Prock conveyed her interest in the Southeast Quarter, except the Southeast Quarter of the Southeast Quarter of Section 18 to defendants. Defendants had previously quit claimed their interest in the Southeast Quarter of the Southeast Quarter of Section 18 to Stanley R. Prock and Marsha A. Prock.

Plaintiff purchased his property in June of 1986 from the United States of America, "acting through the Farmers Home Administration". It had acquired it through the foreclosure of a deed of trust. The record titles of the parties are not in dispute.

■ As reflected by the legal descriptions set forth above, the parties' boundaries run along both a north to south and an east to west line. Both lines are in dispute. Defendants' first point relates only to the east to west line, the north line of plaintiff's property and the south line of defendants' property in Section 18. Defendants contend the "trial court erred in admitting, ... evidence of an agreed upon boundary line north of the north line of the Southeast Quarter of the Southeast Quarter of Section 18 because plaintiff's petition alleged ownership in the Southeast quarter only and did not allege ownership to any land to a fence north of said tract."

Plaintiff's petition alleged ownership to the land to which he had record title. However, his pleadings did not exclude ownership beyond that. He alleged that the boundary lines had been established by agreement as reflected by fencing separating the properties "for more than twenty years prior to the erection and construction of fences by defendants in the spring of 1986". Defendants responded to that contention by stating that any such agreement was not in writing and in violation of the Statute of Frauds.

By the pleadings, reenforced by the stipulation of the parties requesting the trial court to ascertain the "boundaries" and "quiet title", it is apparent that the validity of the original east to west fence as a property line was being advanced by plaintiff and disputed by defendants. This contention of plaintiff was denied in defendants' answer and explored by defendants during discovery.

Defendants cite two cases in support of this point, *McCardie & Akers Const. Co. v. Bonney*, 647 S.W.2d 193, 195 (Mo.App. 1983) and *Ozark Wood Industries v. First National Bank*, 625 S.W.2d 651, 653 (Mo. App.1981). Those cases correctly state that evidence must conform to the pleadings. Here the evidence did. The disputed evidence related to the fence line which plaintiff said established the property line running east to west between the tracts. It is obvious from defendants' answer, the discovery that is before us, and the parties' stipulation, that this was an issue contemplated under the pleadings. The trial court did not err in allowing the evidence.

■ Points two and three also relate to the fence line going generally east and west in the Northeast Quarter of the Southeast Quarter of Section 18. Defendants assert that the trial court erred in finding that the fence, constructed in 1956, establishes the boundary lines because Garland Prock, who was farming the land south of the fence under an agreement with his mother, at that time had no ownership in either tract.

Defendants claim that any purported agreement or acquiescence between Garland Prock and defendants could not exist because Garland Prock was not an adjoining landowner as he had no ownership interest in either tract and defendant Lowell Prock owned the remainder interest in both tracts at the time of the alleged agreement and alleged acquiescence. The fence starts in the Northwest Quarter of the Southwest Quarter of Section 17 but most of it is in the Northeast Quarter of the Southeast Quarter of Section 18. Defendants complain only of the court's finding as to the portion in Section 18.

In 1956 the record owners of the tracts were based on the will of James Prock. Bertha Prock had a life estate and Lowell Prock the remainder. Defendants say in Point Two there could be no agreement to establish a property line where the parties agreeing to the fence were not adjoining owners. In Point Three defendants assert that as defendant Lowell Prock had no possessory right to the property he "had no enforceable right to protest said boundary."

There was evidence that Garland, with Lowell's consent and aid, constructed the fence in 1956. Under an agreement with their mother Garland then farmed the land south of the fence up to it and defendant Lowell Prock farmed the land north of the fence. There was testimony that Lowell Prock was aware of the construction of the fence and gave instructions on building it. Approximately ten years after the fence was constructed, defendant Lowell Prock reposted the fence at the same location. There was also evidence that in 1956 Garland Prock thought he had been devised a remainder interest in the land south of the fence. It was not discovered until 1978 that Garland did not have that interest. In 1978 Garland was deeded the Southeast Quarter of the Southeast Quarter of Section 18 by Bertha Prock and defendants.

It is not necessary to decide whether, as defendants contend, there could be no agreement as to the boundary line because at the time the fence was constructed Lowell Prock did not have title to any of the land in question. Nor is it necessary to decide if there could be no valid agreement as to the line because between the time the fence was constructed in 1956 until 1978 when he received his mother's interest, defendant Lowell Prock held only a remainder interest. There was sufficient acquiescence in the fence line from 1978 until 1986 to support the trial court's finding.

■ In Missouri and elsewhere an uncertain or disputed boundary line may be established by agreement, written or oral, with possession taken accordingly and continuing; which fixes what each party owns. *Gillenwaters Building Co. v. Lipscomb*,

482 S.W.2d 409, 412 (Mo.1972); *Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128 (Mo.App.1979).

■ Long acquiescence in a fence as a boundary line will warrant a presumption that it is the true line. *Mothershead v. Milfeld,* 361 Mo. 704, 236 S.W.2d 343, 347 (1951). "Acquiescence for a length of time is evidence of a parol agreement that the line so delineated is to be considered the boundary line. And, where the line has been acquiesced in for a great number of years by all the parties interested, 'it is conclusive evidence of an agreement to that line.' [citing cases] The boundary line thus agreed upon should be considered the true one." *Id.*

■ Even if there had been no evidence of the establishment of an agreed boundary line, possession and use of land on each side of a fence are evidence that there was an agreement to establish the line, and it is only necessary that the possession and use continue long enough to indicate what was the understanding of the adjoining owners. *Martin v. Hays,* 228 S.W. 741, 744 (Mo. 1921); *Brummell v. Harris,* 148 Mo. 430, 50 S.W. 93, 96 (1899).

■ The intent and conduct of defendants before they acquired a possessory interest in the property is relevant to show why they and plaintiff's predessors acquiesced in having the fence be the line and only used the land up to the fence until 1986. After title to their tracts was acquired there was evidence that defendants and Garland and his successor continued to treat the fence as the line. The trial court was justified in determining that the line was established by acquiescence over a sufficient period. Points Two and Three are denied.

Defendants' remaining point relates to the boundary line running generally north and south in the Northwest Quarter of the Southwest Quarter of Section 17 near the Northeast Quarter of the Southeast Quarter of Section 18. The trial court established the line as being that of a former fence just west of the public road, set as

the boundary line in the will of James Prock.

■ This point has merit. The boundary should be the roadway as far as it extends. It is obvious that the fence was established along one side of the road, not to be the boundary line, but for convenience in keeping cattle from going to the road. Acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than a boundary will not amount to an agreement that it is a boundary or establish it as the true line. *Aley,* 584 S.W.2d at 128. While the location of a fence may be a factor in determining the property line, it is not conclusive in the absence of other findings. *Dambach v. James,* 587 S.W.2d 640, 643 (Mo.App.1979).

■ The will purported to make the road the dividing line. Unfortunately, the road does not go the full length of the tracts. Nor is there any survey in the record that would allow this court to set forth how the line should be drawn south of where the trial court decided the road ended. In view of construction south of the end of the road, we conclude that after the road reaches its south end the fence was acquiesced in as the dividing line. Upon remand it appears that the trial court should be able to fashion a decree with the road being the dividing line until it ends with the property line then running from the road's south edge generally west to the previous fence; then continuing south and ultimately west upon the line previously determined by the trial court.

■ A description referring to the road might be sufficient to describe the line until the road ends. See *Allen v. Smith,* 375 S.W.2d 874, 882–883 (Mo.App.1964). However, there is a survey in the record which shows a line near the center of the roadway and perhaps with the aid of that survey and others in the record, and the parties' assistance, an additional survey to establish the line running north to south and connecting to the east to west line would not be required. If not, the trial court has authority to direct a survey of all or part of the property to determine the facts necessary for a proper judgment and

to tax expense of the survey as cost. *Wills v. Meador*, 638 S.W.2d 297, 298 (Mo.App. 1982).

The portion of the judgment determining the property line between the parties' property in Section 18, Township 32, Range 13, Laclede County, Missouri is affirmed. The portion of the judgment determining the boundary line near the Northwest Quarter of the Southwest Quarter of Section 17 and the Northeast Quarter of the Southeast Quarter of Section 18 is reversed and the cause remanded for the trial court to modify that portion of the judgment in accordance with this opinion.

CROW and PARRISH, JJ., concur.