Rex A. CONDUFF and Diana Conduff,
Plaintiffs–Respondents,

v.

George STONE and Barbara Stone,
Defendants–Appellants.

No. 21603.

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 1998.

---

1. Builtrite's motion for attorney's fees in the amount of $500.00 incurred on appeal is granted.

James B. Calton, Joplin, for Appellant.

John Sims, Sims, Johnson & Wood, Neosho, for Respondent.

GARRISON, Presiding Judge.

Rex and Diana Conduff ("Plaintiffs") brought suit to quiet title to a 192–foot–wide strip of land (the "disputed tract") between their property and that of George and Barbara Stone ("Defendants"). The trial court found for Plaintiffs, and enjoined Defendants from entering, occupying, or interfering with Plaintiffs' use of the disputed tract. Defendants appeal. We reverse and remand.

Plaintiffs and Defendants own adjoining properties in rural Newton County. Plaintiffs' land lies directly north of Defendants' land. For many years, a fence (the "old fence") stood 192 feet south of the recorded boundary line between the two properties. The disputed tract lies between the old fence on the South, and the record boundary line on the North. Defendants are the record owners of the disputed tract.

The old fence was built in the early 1960s by Tommy Farmer, Sr. and other members of his family. At that time, Mr. Farmer apparently owned both Plaintiffs' and Defendants' tracts. Around 1975, Mr. Farmer conveyed Defendants' tract to his son, Tommy Farmer, Jr., who sold it to Mr. and Mrs. Jim Triplett in 1976. Defendants purchased the property from the Tripletts in September 1979, and have lived there since then.

Plaintiffs' chain of title is less clear. The record does not reveal when or to whom the elder Mr. Farmer conveyed Plaintiffs' tract. Eventually, it became the property of Charlie Weeden, who apparently owned the tract for a period of time before Defendants purchased their land. Later, Plaintiffs' tract was owned by Rex and JoAnn Critchfield, who sold it to Louis Heater on December 9, 1986. Mr. Heater conveyed the property to Scott Smith on February 20, 1987, but "took it back" from him shortly thereafter. On September 20, 1988, Mr. Heater resold the property to his son, who leased it to Plaintiffs. Mr. Heater later reacquired the property from his son, and sold it to Plaintiffs on December 29, 1989.

Plaintiffs commenced their action to quiet title on July 1, 1996, shortly after Defendants erected a fence (the "new fence") along the record boundary line between Plaintiffs' and Defendants' properties. Defendants filed a counterclaim in three counts, seeking actual and punitive damages for trespass on the disputed tract, an injunction against future trespasses, and damages based upon Plaintiffs' alleged interference with Defendants' attempt to install septic tank laterals on the disputed tract. As we understand the decree, the trial court based its judgment on a combination of the theories of adverse possession and boundary by acquiescence. It found that the old fence "was established as a boundary line between the two properties by long acquiescence," and that "Plaintiffs did prove that their occupancy as well as their predecessors in title was visible and obvious to the record owners for the prescriptive period." It then declared Plaintiffs to be the owners of the disputed tract, ordered Defendants to remove the new fence, and enjoined them from otherwise entering or occupying the disputed tract.

■ The trial court neither entered a judgment concerning Defendants' counterclaim, nor made an express determination that there was no just reason for delay as

authorized by Rule 74.01(b).[1] Ordinarily, this would require us to dismiss the appeal for lack of a final judgment. *Podlesak v. Wesley*, 849 S.W.2d 728, 730 (Mo.App. S.D. 1993). Here, however, the merits of Defendants' counterclaim necessarily depended on a judgment denying the relief sought by Plaintiffs in their suit. When the trial court entered a judgment declaring that Plaintiffs were the owners of that tract, it necessarily rejected Defendants' counterclaim. Under such circumstances, we may review the merits of this appeal. *Id. See also White v. American Republic Ins. Co.*, 799 S.W.2d 183, 194–95 (Mo.App. S.D.1990).

This court will affirm the judgment of the trial court unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Defendants present eight points on appeal. In their first two, they contend that the trial court erred in finding Plaintiffs to be owners of the disputed tract by adverse possession, because this conclusion results from a misapplication of the law, and is not supported by substantial evidence.

A party who seeks to establish title to real property by adverse possession must prove that he possessed the land, and that his possession was 1) hostile and under a claim of right; 2) actual; 3) open and notorious; 4) exclusive; and 5) continuous for a period of ten years. *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. W.D.1996). The ten years of possession must be consecutive, although they need not immediately precede the date of the suit to quiet title. *Id.* An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period. *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 863 (Mo.App. E.D.1992). A claimant's failure to prove even one of the elements of adverse possession will defeat his claim. *Machholz–Parks v. Suddath*, 884 S.W.2d 705, 708 (Mo.App. S.D.1994).

In the instant case, the trial court found that the disputed tract was controlled from the 1970s to the present by "whoever owned [Plaintiffs'] property." The record contains evidence that Plaintiffs, Mr. Heater, Mr. Heater's son, Mr. Smith, and Mr. Weeden occupied and used the disputed tract. Assuming, *arguendo*, that the evidence was sufficient to establish the first four elements of adverse possession, Plaintiffs have failed to establish that these elements existed for an uninterrupted ten year period. Slightly less than nine years, seven months elapsed between the date Mr. Heater purchased Plaintiffs' land and the date this law suit commenced. While the record does not show when, or for what length of time Mr. Weeden owned Plaintiffs' tract, it does reveal that he was not Mr. Heater's immediate predecessor in title. Rather, Mr. Heater's immediate predecessors were Mr. and Mrs. Critchfield, and there is no evidence in the record to show that they possessed the disputed tract at all, let alone adversely. There is likewise no evidence to show that Plaintiffs' more remote predecessors in title adversely possessed the disputed tract for the requisite amount of time. Plaintiffs failure to prove this element of adverse possession is fatal to their claim based on that theory. *Machholz–Parks*, 884 S.W.2d at 708.

In three of their remaining points, Defendants attack the trial court's reliance on a theory of an agreed boundary or a boundary by acquiescence. Plaintiffs, in response, seek to rely on the theory of boundary by acquiescence as an alternative to adverse possession to support the trial court's judgment.

In its conclusions of law, the trial court held, *inter alia:*

> ... the "old fence" line was established as a boundary line between the two properties by long acquiescence which created a presumption that it was the true line, and further, that the Court believes the evidence that the "old fence" line was the agreed boundary line between the two properties since the 1970's and that the possession and use on each side of the fence line continued long enough to indicate that it was the understanding of ad-

---

1. All rule references are to Missouri Rules of Civil Procedure (1997).

joining owners that the "old fence" was the true boundary line . . .

The doctrine of boundary by acquiescence is somewhat murky, and the parties disagree about the meaning of the applicable cases. Defendants interpret *Tillman v. Hutcherson,* 348 Mo. 473, 154 S.W.2d 104, (1941), as requiring that, in the absence of an express agreement fixing the boundary line, a claimant must possess the disputed property for twenty years before he can acquire title to it by adverse possession (i.e., ten years to establish acquiescence in the location of the boundary line, and ten years to establish title by adverse possession). *Tillman,* however, holds that the law does not prescribe the required duration of acquiescence, but rather merely requires that it be long enough to evidence mutual acceptance of the dividing line as the common boundary. *Id.* 154 S.W.2d at 107.

Plaintiffs, on the other hand, cite *Mothershead v. Milfeld,* 361 Mo. 704, 236 S.W.2d 343 (1951), and *Kelley v. Prock,* 825 S.W.2d 896 (Mo.App. S.D.1992), in support of their contention that a party may acquire title to a disputed parcel upon proof of acquiescence in a boundary line for a sufficient period of time to warrant a presumption that the line has been established by agreement. In other words, Plaintiffs contend that they may establish their right to title by showing acquiescence by the adjoining property owners in the boundary line for a sufficient period to establish mutual acceptance of the line by the parties without their proving adverse possession of the disputed tract. In contrast to the instant case, the dispute in *Mothershead* was over the location of the record boundary line, and plaintiff did not undertake to prove title by adverse possession. 236 S.W.2d at 345. In *Kelley,* the plaintiffs based their theory of recovery on an agreement, as opposed to adverse possession. 825 S.W.2d at 898. In *Tillman,* the court held that a claim of title by virtue of an agreed line is one thing, and a claim by adverse possession is another. 154 S.W.2d at 107. It also said that if there is an express agreement setting a boundary line, possession by an adjoining landowner of property on his side of the agreed line *thenceforward* becomes adverse. *Id.*

■ We need not decide the validity of these competing contentions because of Defendants' third point on appeal. In that point, they contend that the trial court erred in relying on the theory of boundary by acquiescence because Plaintiffs did not plead that theory. Plaintiffs argue that they did plead this theory, or, in the alternative, that it was tried with the implied consent of the parties.

■ In support of their contention that they pled boundary by acquiescence, Plaintiffs refer us to the following allegation in their petition:

4. Plaintiffs state that said last described tract is fenced with other property Plaintiffs own adjacent to the North, and more particularly described in paragraph 1, that they have been in possession of said tract for more than ten years and have maintained the fences along the South side of said last described tract, and have used the area, keeping it mowed, pasturing livestock, cutting trees, and have always claimed the land and used it as their own, without any complaint from Defendants or their predecessors in title, until recently when Defendants constructed a new fence in an attempt to claim ownership of said property.

The theory of an agreed boundary line is a distinct theory from that of adverse possession. *Tillman* 154 S.W.2d at 107. An agreed boundary line may be proved by an express agreement, or by acquiescence in a fence as a boundary for a period of time sufficient to evidence a mutual acceptance of the dividing line as the common boundary by the adjoining owners. *Id.* at 106–107. Pursuant to this theory, possession by a non-title holder does not become adverse, for purposes of proving adverse possession, until an agreement is demonstrated by one of these methods. *Id.* at 107–108.

■ Acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than as boundary will not constitute an agreement that it is a boundary or establish it as the true line. *Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128 (Mo.App. S.D.1979). Nor is the failure to

dispute the location of a fence necessarily acquiescence in a boundary, because a fence may be placed for purposes other than fixing it as a boundary. *Id.* at 129. While the location of a fence may be a factor in determining the property line, it is not conclusive in the absence of other findings. *Kelley,* 825 S.W.2d at 900.

The doctrine of boundary by acquiescence appears to be applicable only to *uncertain* or *disputed* boundaries, as opposed to cases where the location of the true boundary is known. *See Gillenwaters Building Co. v. Lipscomb,* 482 S.W.2d 409, 412 (Mo.1972). A boundary by acquiescence is not established unless the adjoining property owners dispute the true location of the property line, and subsequently acquiesce to a barrier established as a boundary. *Aley,* 584 S.W.2d at 128. Adjoining landowners might go for years without knowing the exact location of their dividing line, and unless or until a dispute arises, there would be no reason to establish a boundary by acquiescence. *Id.* at 128–29.

Averments in a pleading should be given a liberal construction and accorded those favorable inferences fairly deducible from the facts stated. *Pippins v. City of St. Louis,* 823 S.W.2d 131, 133 (Mo.App. E.D. 1992). To determine the cause of action pled, we read the petition in its entirety "from its four corners," giving the language its plain and ordinary meaning, and interpret it as it fairly appears to have been intended by the pleader. *Burns v. Black & Veatch Architects, Inc.,* 854 S.W.2d 450, 457 (Mo. App. W.D.1993).

The paragraph of the petition relied on by Plaintiffs does not allege an agreement, either express or presumed, as a result of long acquiescence, that the old fence line be the boundary between their property and Defendants' land. Neither does it allege that the boundary was uncertain or disputed, or that the old fence was placed there as a boundary or intended by the adjoining owners to be treated as such. Accordingly, we are unable to conclude that it pled a theory of boundary by acquiescence as argued by Plaintiffs.

Relief granted by a judgment is limited to that sought by the pleadings. *State ex rel. Mohart v. Romano,* 924 S.W.2d 537, 540 (Mo.App. W.D.1996). To the extent a judgment goes beyond the issues presented and raised by the pleadings, it is void. *Id.* Rule 55.33(b), however, provides that "[w]hen issues not raised by the parties are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "Failure to timely and specifically object to evidence beyond the scope of the pleadings constitutes implied consent for determination of the issues raised." *Rice v. James,* 844 S.W.2d 64, 67 (Mo.App. E.D.1992). The implied consent rule, however, applies only when the evidence presented applies only on a new issue and is not relevant to issues already present in the case. *Thompson v. Thompson,* 835 S.W.2d 570, 573 (Mo.App. W.D.1992).

Plaintiffs argue that even if they did not plead "boundary by acquiescence," the issue was tried by the implied consent of the parties. It is the burden of the party contending that an issue was tried by implied consent, however, to demonstrate that that was so. *Id.* at 572–573. In the instant case, Plaintiffs' entire argument in support of this theory is that "[Defendants] never objected to evidence of this issue being presented at trial and since it would, therefore, be considered a new issue and not relevant to the issue already in the case, the cause of action should be allowed to stand since no objection was made and the evidence would be allowed by complied [sic] consent under Rule 53.33(b)." Plaintiffs do not provide any citation to the record demonstrating what evidence they contend resulted in the issue being tried by implied consent, or that it was presented without objection. They have failed to plead boundary by acquiescence, or to show that it was tried by implied consent.

As indicated earlier, the trial court apparently based its judgment on the theories of adverse possession and boundary by acquiescence. We have determined that to the extent that the judgment was based on adverse possession, it is not supported by substantial evidence. We have also determined that Plaintiffs neither pled the theory of a bound-

ary by acquiescence, nor demonstrated that the issue was tried with the implied consent of the parties. Accordingly, the judgment must be reversed. Because of this result, we do not reach the other points raised by Defendants.

The judgment of the trial court is reversed and the case is remanded for consideration and determination of Defendants' counterclaim.

PREWITT and CROW, J., concur.