**Anna M. WATSON, Respondent,**

v.

**Jeffrey L. MOORE and Earl Cole, Appellants.**

**No. 22986.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 14, 2000.

Jacob Y. Garrett, Garrett & Silvey, West Plains, for appellants.

John N. Wiles, West Plains, for respondent.

CROW, Presiding Judge.

This is a dispute about a 16–foot–wide strip of land.

The case reached this court by appeal in 1998, but this court dismissed the appeal because the judgment lacked finality.

*Watson v. Moore,* 983 S.W.2d 208 (Mo. App. S.D.1999).

Thereafter, the trial court entered judgment disposing of all issues and parties. The judgment declared Anna M. Watson ("Plaintiff") owner of the disputed strip.

A timely notice of appeal was filed, identifying the appellants as Jeffrey L. Moore and Earl Cole. However, the "Appellant's Brief," filed five months after the notice of appeal, names only Moore[1] as the appellant. This court gathers from the averments in the brief that Moore alone challenges the judgment.

Moore holds record title to the disputed strip by virtue of a deed from James A. Thompson, Jr. and Jennifer Jeanette Jensen dated February 12, 1996. However, the trial court held Plaintiff had acquired ownership of the disputed strip by adverse possession before 1996.

One who seeks to establish ownership of real estate by adverse possession must prove his—or her—possession was (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years. *Conduff v. Stone,* 968 S.W.2d 200, 203[3] (Mo.App. S.D.1998). Failure to prove even one element defeats the claim. *Id.*

Moore's brief presents three assignments of error. His first maintains Plaintiff failed to prove element 1; his second maintains Plaintiff failed to prove element 3; his third maintains Plaintiff failed to prove element 4.

The standard for this court's review is found in Rule 73.01(c).[2] In *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), the Supreme Court of Missouri construed the predecessor of Rule 73.01(c) to mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1].[3]

In applying the above standard, an appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregarding all contrary evidence and inferences. *Mehra v. Mehra,* 819 S.W.2d 351, 353[2] (Mo. banc 1991). That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

Viewed favorably to the judgment,[4] the evidence established that Plaintiff is the widow of Cecil Watson. She and he bought a 10–acre tract from Ellen McClain and Earl McClain in April 1968 and moved onto it July 4, 1968. Plaintiff resided

1. For brevity and clarity, this opinion henceforth refers to Jeffrey L. Moore and Earl Cole by their respective surnames. No disrespect is intended.

2. References to rules are to Missouri Rules of Civil Procedure (1999).

3. Rule 84.04(e) provides that the argument in an appellant's brief shall "include a concise statement of the applicable standard of review for each claim of error." This court finds no statement of the applicable standard of review in the argument following any of Moore's claims of error.

4. Rule 84.04(c) provides that the statement of facts in an appellant's brief shall "be a fair and concise statement of the facts relevant to

the questions presented for determination without argument." The statement of facts in Moore's brief sets forth facts favorable to him, but omits facts supporting the trial court's ruling that Plaintiff acquired ownership of the disputed strip by adverse possession. A brief that emphasizes facts favorable to the appellant and omits facts essential to the respondent does not substantially comply with Rule 84.04(c). *Vodicka v. Upjohn Co.,* 869 S.W.2d 258, 263 (Mo.App. S.D.1994). Because of Moore's defective statement of facts, this court, aided by the statement of facts in Plaintiff's brief, was obliged to seine the record in order to assemble the facts favorable to the judgment.

there continuously until time of trial.[5]

This court gleans from the record that the tract's south boundary abuts the right-of-way of Highway 160.

When Plaintiff and her husband bought the tract, a tree-lined "lane" lay along its west side.[6] A north-to-south fence lay west of the lane. The fence ended before reaching the highway.[7]

Plaintiff avowed she believed the fence "was pretty much on the [property] line"; that is, she thought the description in her deed included all land east of the fence.

In 1971, Plaintiff and her husband bought an 80–acre parcel immediately northwest of their 10–acre tract.

In 1972, Plaintiff began operating a beauty shop on the 10–acre tract. She was still operating it at time of trial.

Betty Walker lived on the property immediately west of the 10–acre tract from 1960 to 1967, but moved away before Plaintiff and her husband bought the 10–acre tract. Walker testified the fence on the west side of the lane ended 50 to 75 feet north of the highway. She never claimed any land east of the fence; however, she and her husband repaired the fence when necessary.

In 1977, Bill Brotherton bought the property formerly occupied by the Walkers. He owned it until 1989. He resided there.

This court deduces from Brotherton's testimony that he recalled the fence west of the lane ended about 90 feet from the highway right-of-way. Brotherton avowed he never claimed anything east of the fence, but he paid half the cost of rebuilding it. The rebuilt fence was "[a]s near as they could put it in the same place." Asked whether he knew where the proper-

ty line was, Brotherton answered, "I was sure enough that I paid ... half of the wire and half of the post and all that to put the ... new fence in."

Louella Cotter and her husband construct fences. When Brotherton lived on the property west of Plaintiff's 10–acre tract, Cotter and her husband rebuilt the fence west of the lane for Brotherton and the Watsons. This court infers that project was the one recounted by Brotherton.

Plaintiff testified that after the fence was rebuilt, she made "improvements" on the east side of it. Specifically, Plaintiff "put out pine trees" and constructed "a rock fence" around a flower bed near the rebuilt fence. No one except Plaintiff, her family, and their invitees used the area east of the fence from 1968 until 1996. Plaintiff and her family used the area as a yard and for picnics; Plaintiff's beauty shop customers parked there.

In February 1996, Cole, acting for Moore under a power of attorney, bought the property once owned by Brotherton. Cole received and recorded a deed naming Moore as the sole grantee. The record indicates the purpose of the purchase was to operate a "flea market" on the property.

Cole, acting for Moore, hired the county surveyor to locate and mark the boundaries of the land described in Moore's deed.

The surveyor completed the survey April 15, 1996.[8] During the survey, the surveyor noted a fence line approximately 16 feet west of the east boundary of the property described in Moore's deed. The surveyor labeled the 16–foot–wide area between the fence and the east boundary described in Moore's deed as a "trail" on

---

**5.** The cause was tried July 30, 1997.

**6.** A plat of a survey by the county surveyor labels the lane a "trail." Lawyers for both sides called it a lane at trial. This opinion adopts counsels' designation.

**7.** As set forth *infra*, witnesses differed as to the distance from the end of the fence to the highway.

**8.** The April 15, 1996, survey is the one referred to in footnote 6, *supra*.

the survey plat.[9]  This opinion henceforth refers to the "trail" as "the disputed strip."

The surveyor observed "some flower beds" in the disputed strip.

The surveyor calculated the distance from the south end of the fence to the north edge of the highway right-of-way as 69 feet.

On the survey plat, the surveyor showed a "driveway" that "came off of the highway to access ... both properties," i.e., Plaintiff's 10–acre tract and the property described in Moore's deed.

When the surveyor delivered the survey plat to Cole, the surveyor cautioned Cole that the fence and flower beds might indicate a claim of ownership adverse to Moore.

According to the surveyor, Cole asked what could be done.

The surveyor responded: "[T]hat's going to be up to ... a judge and a court of law if it's ever contested."

After the survey, Cole hired a bulldozer operator and instructed him to "bulldoze out the fence." [10]  Asked at trial whether he (Cole) told the operator to "bulldoze" the flower garden, Cole answered: "I told him to bulldoze out the trash that was piled up there.  You can call it a flower garden all you want to."  Cole conceded he moved a picnic table sitting in the disputed strip.

Plaintiff commenced this suit by filing a four-count petition against Moore and Cole October 2, 1996.  Plaintiff averred Moore and Cole "caused to have the old existing fence bulldozed, destroyed a rock garden, removed trees, and encroached upon the property owned and claimed by Plaintiff."

Moore and Cole filed a four-count counterclaim.  The relief sought by each side is listed in *Watson*, 983 S.W.2d at 209.

At the start of the trial, Plaintiff's lawyer announced Plaintiff "will dismiss against Earl Cole since he is not a record owner of the property."

The trial court entered judgment stating, *inter alia:*

> "[T]his Court concludes plaintiff has established title to the disputed 16–foot boundary area by adverse possession.  From 1968 until defendant[11] bulldozed the area, plaintiff used the land exclusively as her yard and as a parking area for her business.  The land was mowed, flower gardens constructed, and picnic tables erected by plaintiff.  Plaintiff claimed and intended to possess the land east of the driveway and boundary fence as her own.  Although defendant argues plaintiffs [sic] did not intend to claim any land other than the land set forth in her deed, plaintiff testified she thought the legal description included the land up to the fence and driveway[.]  ... Plaintiff claimed ownership of all land up to the extended boundary fence line.

> Defendant also argues plaintiff's adverse possession claim must fail because the fence line did not extend the entire length of the boundary to the highway right-of-way.  Although fencing is one of the strongest indications of adverse possession, no *per se* rule requires a boundary line to be marked by a physical barrier.  Simply because the remaining

---

9.  Footnote 6, *supra*.

10.  Cole swore at trial that Plaintiff put up a wooden fence "about a week after I bought the property, before I had it surveyed." Plaintiff testified the fence on the west side of the disputed strip was part wire and part board.  Asked on cross-examination whether she lengthened the fence after "the trouble began," she answered, "No, sir."  Asked about the "four-board fence," Plaintiff replied, "It was on the line."  The surveyor testified the fence he saw on the west side of the disputed strip "was a wooden fence the first part and a wire fence the remainder of it."  Asked the condition of the wooden part, the surveyor responded: "It's really hard to remember ... the condition of the fence. . . . [I]t wasn't a new fence."  The trial court had to do the best it could with that evidence.

11.  This court infers the trial court used the term "defendant" to refer to Moore, not Cole.

69 feet between the end of the fence line and the highway right-of-way was not physically enclosed does not prevent this Court from readily determining the location and description of the claimed boundary line by plaintiff." (Citations omitted.)

Consistent with those findings, the trial court declared Plaintiff owner of the disputed strip and granted her additional relief that need not be catalogued. The trial court denied Moore and Cole all relief they sought against Plaintiff.

■ Moore's first point proclaims Plaintiff failed to establish that her possession of the disputed strip was hostile and under a claim of right, in that the evidence did not demonstrate her ownership was "opposed and antagonistic" to the "ownership rights of Defendant."

This court observes that if the evidence supported a finding that Plaintiff acquired ownership of the disputed strip by adverse possession before Moore (through Cole) received his deed (February 12, 1996), it is immaterial whether Plaintiff's possession after that date was opposed and antagonistic to Moore's ownership rights.

■ Citing *Brinner v. Huckaba*, 957 S.W.2d 491, 494[9] (Mo.App. E.D.1997), Moore correctly asserts that in order for possession to be hostile and under a claim of right, such possession must be opposed and antagonistic to the claims of others.

Moore maintains Plaintiff did not satisfy that requirement because "she admitted on numerous occasions that others used a vast portion of the land in dispute." Moore cites one page of the 243-page transcript in support of that declaration.[12]

Upon examining the page cited by Moore, this court discovered the witness whose testimony appears there was Plaintiff's daughter, not Plaintiff! The testimony concerned the use of a driveway that provides access from the highway to Plaintiff's 10-acre tract and Moore's property. Plaintiff's daughter characterized the use of the driveway as "always a shared access."

Contrary to Moore's allegation, the driveway does not constitute "a vast portion of the land in dispute." As this court comprehends the survey plat, the driveway begins in the highway right-of-way, north of the pavement but south of the boundaries of Plaintiff's 10-acre tract and Moore's property, and extends north. While still in the right-of-way, the driveway reaches a fork, the east prong of which leads to Plaintiff's 10-acre tract, while the west prong provides access to Moore's property.

The trial court apparently shared this court's understanding of the evidence. The trial court found: "Although both properties used a common highway culvert and entrance over the years, the entrance lanes for both properties appear to be located on the highway right-of-way, as illustrated in [the survey plat.]"

For the above reasons, this court rejects Moore's premise that Plaintiff admitted others used "a vast portion" of the disputed strip.

Another component of Moore's hypothesis that Plaintiff's possession was not hostile is, in Moore's words: "Plaintiff admitted that she did not intend to own anything more than what was called for in her legal description." As this court understands Moore's brief, he bases that assertion on the following passage from Plaintiff's cross-examination:

"Q. You thought [the fence] was pretty much on the line; is that correct?

A. Yes, sir.

---

12. Rule 84.04(i) provides that all statements of fact and argument in an appellant's brief shall have specific page references to the legal file or the transcript. The statement of facts in Moore's brief contains numerous assertions of fact without any page reference to the legal file or transcript.

Q. It was your intention for that fence to be on the property line; wasn't it?

A. Yes, sir.

Q. You don't intend to own anything more than what your legal description provides for; do you?

A. No, sir."

However, on redirect examination, this exchange occurred:

"Q. Now, when [Moore's lawyer] said that you intended to own just what your deed called for, you thought that it included up to that fence and up to the driveway; is that right?

A. Yes, sir. Mr. McClain[13] told us it did."

Moore objected that Plaintiff's answer was hearsay.

The trial court ruled the answer admissible to show Plaintiff's state of mind but inadmissible as evidence of where the property line in Plaintiff's deed lay.

The sole case relied on by Moore to support his theory that Plaintiff's testimony undermined her claim is *Adams v. White*, 488 S.W.2d 289 (Mo.App.1972). There, the court explained:

"[I]f a defendant, even through ignorance and mistake of the true boundary, builds a fence which encroaches upon another, his possession will be adverse provided his intention is to hold and claim in all events the entire property that the fence enclosed. On the other hand, if a defendant locates the fence on what he recognizes and supposes to be the true line and only intends to claim to the true line whenever and wherever it might be ascertained, the possession is not adverse."

*Id.* at 292–93[4] (citation omitted).

The above excerpt does not aid Moore because Plaintiff, on redirect examination,

made it clear that she believed all land east of the fence line was included in the description in her deed. Plaintiff never testified that if her deed described less land, she intended to claim only what her deed described.

Thus, when Plaintiff testified she intended to own only what her "legal description" provided, the trial court could have reasonably construed that testimony to mean Plaintiff believed her deed described all land east of the fence line and she intended to claim all of it, but claimed no land west of the fence line.

The trial court obviously understood Plaintiff's testimony that way. As reported earlier, the trial court found: "Plaintiff claimed ownership of all land up to the extended boundary fence line."

*Moore's first point is without merit.*

■ Moore's second point maintains Plaintiff failed to establish her possession of the disputed strip was open and notorious. Moore cites one case in support of that theory: *Elliott v. West*, 665 S.W.2d 683 (Mo.App. S.D.1984). There, this court said:

"Where ... actual knowledge of the record owner is not proved, the claimant must show an occupancy so obvious and well recognized as to be inconsistent with and injurious to the owner's rights that the law will authorize a presumption from the facts that he had such knowledge."

*Id.* at 691[11].

Moore insists that "a common driveway was being used by both parties and there was no form of demarcation separating the two properties except for a board fence located on the property of Plaintiff that was clearly inside any property being claimed by the Plaintiff." In support of that assertion, Moore's brief directs this

---

**13.** As reported earlier in this opinion, Plaintiff and her husband bought the 10–acre tract from the McClains.

court to one page of the transcript where Plaintiff's daughter's testimony appears.

Upon studying that testimony in context, this court deduced Plaintiff's daughter was referring to a fence other than the one on the west side of the disputed strip. Consequently, that testimony does not aid Moore.

Moore also argues: "It was not until nearly 100 feet unto [sic] the property that there were the remains of an old fence which was severely dilapidated and failed to have an ascertainable beginning and ending."

Regardless of the condition of the fence, it is obvious the surveyor saw it, as he marked it on the survey plat as an "existing fence line." The surveyor also marked the "trail" on the plat. The trail lies just east of the fence line. The south end of the. trail, as shown on the plat, begins in the highway right-of-way and extends north, becoming the disputed strip upon crossing the right-of-way boundary. The disputed strip proceeds north from the right-of-way some 400 feet, ending at a gate. As this court understands the survey plat and the surveyor's testimony, the gate is an entrance to the 80–acre parcel Plaintiff and her husband bought in 1971.

Plaintiff's possession of the disputed strip was evidently obvious to Brotherton during the 12 years he owned the land west of the fence, as he shared with Plaintiff and her husband the cost of rebuilding the fence and never claimed any land east of it.

Additionally, Plaintiff's possession of the disputed strip was sufficiently open and notorious to cause the surveyor to caution Cole that the fence and flower beds might indicate a claim of ownership adverse to Moore.

Viewing the evidence and permissible inferences in the light most favorable to the judgment, *Mehra*, 819 S.W.2d at 353[2], this court holds the evidence sufficient to support the trial court's finding that Plaintiff's possession was open and notorious.

Moore's second point is denied.

 His third point avers Plaintiff failed to establish that her possession of the disputed strip was exclusive.

Moore's hypothesis appears to be that Plaintiff recognized the "driveway" as a "common driveway" and the means by which Cole and others would have entered the land Cole bought for Moore.

The flaw in Moore's theory is that, as noted earlier, the trial court found the culvert and entrance used over the years by people entering both properties lay in the highway right-of-way, not in the disputed strip. The survey plat appears to confirm this, as the "trail" begins in the right-of-way and the fork from which a prong leads to each property appears to lie in the right-of-way.

Viewing the evidence favorably to the judgment, *Mehra*, 819 S.W.2d at 353[2], this court rejects Moore's third point.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.