

# Missouri Court of Appeals

## Southern District

### Division Two

THE EMPIRE DISTRICT ELECTRIC COMPANY,

    Respondent,

v.

DOUGLAS L. COVERDELL,

    Appellant,

and

CITY OF BRANSON, ET AL.,

    Respondents.

No. SD 35226

Filed: December 5, 2019

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Timothy W. Perigo, Special Judge

**<u>AFFIRMED</u>**

The trial court granted summary judgment in favor of HCW Development Company, LLC; HCW Private Development, LLC; and HCW North, LLC (collectively, HCW) and against Douglas Coverdell (Coverdell) on his claim for adverse possession of approximately 27 acres of property, which includes portions of the Branson Landing in

Branson, Missouri.[1]  Following entry of summary judgment in favor of HCW, a joint motion seeking to have the ruling on Coverdell's adverse possession claim reduced to a final judgment was filed by three other parties also involved in the underlying dispute with Coverdell:  the City of Branson (Branson); Empire District Electric Company (Empire); and Central Bank of Branson (Central).  The trial court granted the joint motion and entered a final judgment disposing of all claims against all parties.  Coverdell appealed from that judgment, raising four points of alleged error.  For the reasons stated below, we affirm.

### Factual and Procedural Background

This is the third time the underlying dispute has been before us on appeal.  *See* **Empire Dist. Elec. Co. v. Coverdell**, 344 S.W.3d 842, 844 (Mo. App. 2011) (**Empire I**); **Empire Dist. Elec. Co. v. Coverdell**, 484 S.W.3d 1, 4 (Mo. App. 2015) **(Empire II)**.  By way of overview, the underlying dispute originated from a 2003 action in which Coverdell prevailed against Empire in quieting title to an initial 3.36-acre tract located north of the property at issue.  The purported property description of that 3.36-acre tract submitted by Coverdell, however, included a large tract of property south of the initial tract, together totaling 27 acres and encompassing portions of the Branson Landing.  That property description was incorporated into the 2010 judgment.  Empire and Branson appealed from that judgment.  **Empire I**, 344 S.W.3d at 844.

In **Empire I**, this Court reversed the judgment in that civil case on the ground of plain error.   Based on Coverdell's judicial admissions at trial that the dispute concerned only the 3.36 acres "up north," our opinion in **Empire I** held that the 2010 judgment

---

[1]  The judgment against Coverdell was also against Coverdell Enterprises, Inc. (CEI).  CEI filed a separate notice of appeal, so its points of alleged error are not addressed in this opinion.

2

quieting title in Coverdell "in what appears to be a 27 acre tract of land was in error" and the judgment affected Branson's substantial rights, resulting in a manifest injustice. *Id*. at 851-52. We reversed the 2010 judgment and remanded the cause. We instructed the trial court to permit Branson to amend its pleadings and to freely permit amendment of the pleadings of Empire and Coverdell, without prejudice to the rights of third parties to intervene in the litigation as the Rules of Civil Procedure might provide. *Id*. at 853.

Following remand, pursuant to the opinion and mandate in ***Empire I***, Coverdell took the position that his claims were not limited to the 3.36 acres that were the subject of his judicial admissions. Instead, he asserted that he had always been claiming the full 27 acres, which he referred to as "Properties A and B." Property A includes Property B, which Coverdell alleged that he conveyed by deed to Coverdell Enterprises, Inc. (CEI). Because Property A includes the entirety of Property B, we use the phrase "Property A" to refer to the full 27-acre tract at issue in this appeal.[2] Coverdell claimed ownership of this entire tract by deed (Count I) and by adverse possession (Count II). Consistent with this Court's mandate in ***Empire I***, additional interested parties sought and were granted intervention.

---

[2] The property description of Property A was included in the appendix of ***Empire II***. To be very clear, because this entire 27-acre tract of Property A is at issue in this appeal, we repeat its description here:

> All that part of the SE¼ of the NW¼ situate on the right bank of Roark Creek and that part of the NE¼ of the SW¼ in Section 33, Township 23, Range 21, EXCEPT a tract of land more particularly described as beginning at the NE corner of Park Addition to the City of Branson, Missouri thence North 2º 19' West to the Southerly bank of Roark Creek; thence in a Southerly direction with the Easterly and Southerly bank of said Roark Creek to the Northerly line of said Park Addition, thence Easterly to the point of beginning all bearings being referenced to the centerline of Sycamore Street as being due North and South.

***Empire II***, 484 S.W.3d at 34; *see also* ***Empire I***, 344 S.W.3d at 847 (reciting the same property description when tracing the history of Coverdell's deed).

3

These included lienholders U.S. Bank and Arvest Bank. Thereafter, Branson, U.S. Bank and Arvest Bank filed motions for summary judgment against Coverdell and CEI. They both failed to timely respond. The trial court entered summary judgments in favor of Branson, U.S. Bank and Arvest Bank, and against Coverdell and CEI on the Count I deed-based claims. The trial court also dismissed the Count II claim of Coverdell for adverse possession. Coverdell and CEI appealed, resulting in our opinion and mandate in *Empire II*, 484 S.W.3d at 1.

In *Empire II*, we held that the entry of summary judgment on the deed-based claims of Coverdell and CEI was proper. This Court reversed, however, as to the dismissal of Coverdell's claim for adverse possession. We based the reversal on the inability to determine, from the property description of Property A, whether it "matched up with or overlapped specific portions" of other property described in the motions for summary judgment:

> We cannot tell from the face of the summary judgments whether a claim by Coverdell that he had acquired [Property A] by adverse possession would be precluded by the uncontested facts set forth in the summary judgment motions that were constructively admitted by him due to his failure to controvert them.

*Empire II*, 484 S.W.3d at 34. We remanded the matter to the trial court "for further proceedings limited to the resolution of Coverdell's claim for adverse possession of [Property A.]" *Id*.[3]

On the same day this Court decided *Empire II*, we decided a companion case brought in 2011 by lienholders U.S. Bank and Arvest Bank to quiet title to certain tracts of

---

[3] Coverdell could not convey title to property he did not own. Because CEI's deed to Property B came from Coverdell, CEI's purported ownership interest in Property B would be determined by whether Coverdell could prove he owned Property B by adverse possession.

land included in the 2010 judgment. *See U.S. Bank, N.A. v. Coverdell*, 483 S.W.3d 390 (Mo. App. 2015). After the lienholders obtained judgments as to certain lots, Coverdell appealed. *Id*. at 394. This Court reversed and remanded, directing the trial court to stay the 2011 case, pending a final resolution of the instant case. *Id*. at 404.

HCW was among the parties involved in the 2011 companion case, but not in the instant case. HCW first became involved in late 2003 when HCW Development Company, LLC began leasing land from Branson to be developed as the Branson Landing. Following remand of Coverdell's adverse possession claim in *Empire II*, HCW requested and was granted leave to intervene in this case. Thereafter, HCW filed their motion for summary judgment, memorandum in support, statements of 30 uncontroverted material facts and additional material facts (HCW's SUMF).

Significantly, HCW's SUMF began with facts that cleared up the confusion in *Empire II*. As mentioned previously, this Court could not tell from the face of the three previous summary judgments whether, and to what extent, Coverdell's admissions applied to the same real estate Coverdell described as Property A. In Coverdell's response to HCW's SUMF, he admitted that: (1) the property at issue in this litigation was "Property A as described in [his] reasserted Claims"; (2) Property A as described "is the Branson Landing"; and (3) that Property A is set forth in Exhibit A, which is a survey that graphically depicts the real property to which he claims to have acquired title through adverse possession. There is no question that Coverdell is claiming adverse possession of the entire 27-acre tract described as Property A. HCW's motion sought summary judgment, *inter alia*, on the ground that Coverdell cannot show the continuous ten-year time period required to show adverse possession of Property A as a matter of law.

5

Before the trial court ruled on HCW's motion, Central, as the successor in interest to Arvest Bank, filed a motion to intervene. Coverdell did not object, and the trial court granted the motion. At this point in the litigation, the parties involved in the adverse possession dispute with Coverdell were HCW, Branson, Empire, and Central.

After extensive briefing on the matter, the trial court entered summary judgment in favor of HCW and against Coverdell on his claim of adverse possession of Property A. Soon thereafter, upon the joint motion of Branson, Empire and Central, the trial court entered final judgment as to all parties on the grounds that the effect of the judgment, which held that Coverdell could not as a matter of law meet the elements of adverse possession, was dispositive of the entirety of Coverdell's claim, thereby terminating the litigation as to all parties.

Coverdell presents four points on appeal. He contends the trial court erred by: (1) granting HCW's motion for summary judgment; (2) entering judgments in favor of HCW, Branson, Empire and Central because "these parties lack standing"; (3) permitting HCW to intervene in the litigation; and (4) entering final judgment in favor of Branson, Empire, and Central. Additional facts will be included below as we address each of Coverdell's four points.

*Point 1 – Summary Judgment*

Coverdell's first point challenges the summary judgment in favor of HCW. A summary judgment shall be granted "[i]f the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6); ***Schnurbusch v. W. Plains***

6

***Reg'l Animal Shelter***, 507 S.W.3d 675, 679 (Mo. App. 2017).[4]  If, as a matter of law, the trial court's judgment is sustainable on any theory, it should be affirmed on appeal. ***Goerlitz v. City of Maryville***, 333 S.W.3d 450, 453 (Mo. banc 2011); *see **ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 387-88 (Mo. banc 1993). "We view the record in the light most favorable to the non-moving party, drawing all inferences in that party's favor."  ***Progressive Max Ins. Co. v. Hopkins***, 531 S.W.3d 649, 651 (Mo. App. 2017); *see also **Lindsay v. Mazzio's Corp.***, 136 S.W.3d 915, 920 (Mo. App. 2004).

"Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework."  ***Jones v. Union Pac. R.R. Co.***, 508 S.W.3d 159, 161 (Mo. App. 2016) (italics in original); *see **Alvis v. Morris***, 520 S.W.3d 509, 511-12 (Mo. App. 2017) (we review the undisputed material facts established by the process set forth in Rule 74.04(c)).  Facts in support of the moving party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. ***ITT***, 854 S.W.2d at 376.  Rules 74.04(c)(2) and (c)(4) require the non-movant to "support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial."  ***Central Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC***, 422 S.W.3d 312, 320 (Mo. banc 2014).  If a denial is not properly supported as required by these subparts of the rule, the fact is deemed admitted.  ***Central Trust***, 422 S.W.3d at 320; *see, e.g.*, ***Progressive Max Ins. Co.***, 531 S.W.3d at 650 n.1 (because non-movant's response failed to comply with Rule 74.04(c)(2), the factual allegations in

---

[4]  All rule references are to Missouri Court Rules (2018) unless otherwise specified. All statutory references are to RSMo (2000).

movant's statement of uncontroverted material facts "are deemed admitted, and we must treat them as true for purposes of this opinion").[5]

A defending party, such as HCW, may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements facts; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) the undisputed facts support each of the necessary elements of the defending party's properly pleaded affirmative defense. *ITT*, 854 S.W.2d at 381. "Each of these three means establishes a right to judgment as a matter of law." *Lindsay*, 136 S.W.3d at 920. Because the propriety of summary judgment is purely an issue of law, we review the grant of a summary judgment *de novo*. *Id*. at 919.

Coverdell's point contends the trial court erred by granting HCW's motion for summary judgment "without allowing discovery because there is no legal basis" for ruling

---

[5] Rule 74.04(c)(2) states that "[t]he response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements." Of the 30 factual statements in HCW's SUMF, Coverdell admitted 10. This is a proper Rule 74.04(c)(2) response. Coverdell "objected" to 15 of the factual statements and denied them based upon the objection. These were improper responses for two reasons. First, the plain language of Rule 74.04(c)(2) does not permit an objection to a factual statement. *See id*.; *cf*. Rule 57.01(c)(3) and Rule 58.01(c)(3), which permit information to be withheld because of an objection. Second, Coverdell's denials were not supported by "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Therefore, these 15 factual statements are deemed admitted by Coverdell's improper response. *See Central Trust*, 422 S.W.3d at 320. With respect to the other five factual statements made by HCW, Coverdell again denied based on an objection, but also attached exhibits to support its argument for adverse possession based upon his purported ability to tack the years of possession of his predecessors in title. For reasons stated *infra*, Coverdell's tacking argument fails as a matter of law. Consequently, Coverdell's attached exhibits are not material to the judgment. *See Goerlitz*, 333 S.W.3d at 453 ("[a] material fact in the context of summary judgment is one from which the right to judgment flows").

8

against him on his adverse possession claim.[6]  "A party who seeks to establish title to real property by adverse possession must prove that he possessed the land, and that his possession was:  (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years."  *Stratford v. Long*, 430 S.W.3d 921, 924 (Mo. App. 2014); *see Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009); § 516.010 (specifying the requisite possession must be "within ten years before the commencement of such action").  "The statute of limitations applicable to adverse possession claims does not apply to public lands, and, therefore, title to public property cannot be claimed on the basis of adverse possession. § 516.090."  *Rice v. Huff*, 22 S.W.3d 774, 781 (Mo. App. 2000); *Ben Brower Prop. Co., LLC v. Evella, LLC*, 554 S.W.3d 504, 508 n.4 (Mo. App. 2018).  To meet the burden of proof as to the ten-year requirement, the years of possession "must be consecutive, although they need not immediately precede the date of the suit to quiet title."  *Conduff v. Stone*, 968 S.W.2d 200, 203 (Mo. App. 1998).  "An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period."  *Id.*; *Pike v. Williamson*, 403 S.W.3d 608, 612 (Mo. App. 2011).  "A claimant's failure to prove even one of the elements of adverse

---

[6] Although Coverdell's point alleges error in granting summary judgment "without allowing discovery[,]" Coverdell fails to develop this allegation in the argument section of his brief and has therefore abandoned this claim.  *See Regions Bank v. Davis*, 521 S.W.3d 283, 286 n.4 (Mo. App. 2017); *Lack v. Payne*, 151 S.W.3d 862, 867 (Mo. App. 2004).  Moreover, Coverdell maintained a different position below, explaining to the trial court at a status hearing after remand of *Empire II* that if the court "were to say cut off the discovery right now, we would be fine with that …. We're ready to go."  It is well settled that this Court will not permit a party to take an inconsistent position or complain on appeal about an alleged error which he invited by his own conduct at trial.  *See Klineline v. Klineline*, 481 S.W.3d 551, 554 (Mo. App. 2015); *Ard v. Shannon Cty. Comm'n*, 424 S.W.3d 468, 476 (Mo. App. 2014).

possession will defeat his claim." ***Conduff***, 968 S.W.2d at 203. The following facts are relevant to this point.

In Count II of Coverdell's claims, Coverdell alleged that he and his "predecessor [in] title" adversely possessed Property A because:

> (1) [they] "continuously occupied, repaired, maintained and improved Property A … since 1907"; (2) [their] "possession of Property A … has been hostile to the rights of all other parties in this action and under color of title"; (3) [they] have "had actual possession" of these properties "during all the time they have occupied said property"; (4) [their] occupation had been "actual, open and notorious possession"; and (5) [their] possession had been "continuous, uninterrupted" for "more than ten (10) consecutive years."

***Empire II***, 484 S.W.3d at 9. Coverdell's predecessor in title was Tori, Inc. (Tori), a company owned and controlled by Peter Rea. In September 1999, Tori, through Peter Rea and his wife (collectively the Reas), executed a General Warranty Deed in favor of Coverdell (the Tori deed).[7]

In HCW's SUMF, Coverdell admitted that Tori and the Reas, personally and as statutory trustees of Tori, filed suit on at least three occasions seeking to quiet title to Property A. Coverdell further admitted that in 1993, the third lawsuit (the 1993 Lawsuit) sought to quiet title to Property A by adverse possession, and that suit was dismissed by the trial court with prejudice on September 16, 1993. Specifically, Coverdell admitted:

> The real estate described in the 1993 Lawsuit petition was identical to the legal description set forth as "Property A" in [Coverdell's reasserted claim] in this action.

---

[7] In ***Empire I***, this Court noted a possible mistake in the Tori deed's property description – the same description as Property A at issue here. That description was recited in a quit claim deed Tori received from W.F. and Vera Hoke (the Hokes). ***Empire I***, 344 S.W.3d at 847. We noted, however, "[w]hile we do not so hold, as best we can ascertain, [the Hokes' deed to Tori] appears to convey more to Tori, Inc. than was deeded to the Hokes by the McBrides [the previous owners]." ***Id***. at 847 n.8.

10

The Plaintiffs in the 1993 Tori, Inc. Lawsuit alleged in part as follows: "The plaintiffs … have laid claim to all of the lands … within the description aforesaid, and have owned and held the same in open, notorious, exclusive, continuous, adverse, hostile possession under color of title for more than 31 years[.]"

On June 10, 1993, [Empire] filed a Motion to Dismiss asserting that the Tori, Inc. plaintiffs had brought identical or similar lawsuits against [Empire] in 1977 and 1983 and had voluntarily dismissed both actions.[8]

The 1993 Lawsuit … was dismissed with prejudice by the Court [on September 16, 1993]. No post trial motion was filed or appeal was taken after the dismissal[.]

Coverdell also admitted that Branson: (1) "exclusively possessed" a portion of Property A as a lessee "since at least 1937"; and (2) acquired and owned all of the remaining portions of Property A by December 31, 2002.[9]

In HCW's summary judgment motion, HCW initially argued, and we agree, that Coverdell's admission that Branson "exclusively possessed" portions of Property A since

---

[8] In each of the actions brought in 1977 and in 1983, the Reas filed the action and five years later voluntarily dismissed the action.

[9] Dividing Property A into three parts – the Park Addition, Eastern Peninsula, and Branson Town Company Tract, Coverdell separately admitted that:

The City of Branson has held record title to the **Park Addition** from and after at least December 31, 2002. … The **Eastern Peninsula** and **Branson Town Company Tract** … are owned by [Empire and] were used and occupied and possessed as a park by the City of Branson known as North Beach Park for more than thirty (30) years prior to the commencement of the Branson Landing Development and since at least 1937 Branson has been in possession as a lessee. Pursuant to said leases and for more than thirty (30) years prior to 2002 the City of Branson has continuously and exclusively possessed, used and occupied North Beach Park.

(Emphasis added; record references and paragraph numbers omitted); *see also **Empire I***, 344 S.W.3d at 851-52 (concluding Coverdell judicially admitted he was not disputing ownership of "the North Beach Park area").

11

1937 necessarily negates his ability to prove this element of adverse possession and defeats Coverdell's claim to that property. *See Flowers v. Roberts*, 979 S.W.2d 465, 470 (Mo. App. 1998) (defining "exclusive" possession as requiring claimant to hold land for himself only); *see also Machholz-Parks v. Suddath*, 884 S.W.2d 705, 708 (Mo. App. 1994) (burden remains on the claimant to prove that the ground was not open to the use of others).

With respect to the remaining portions of Property A that Coverdell admitted Branson acquired and owned, HCW argued that, as a matter of law, Coverdell could not prove the element of continuous possession for ten years.[10] Based on relevant dates, HCW maintained that Coverdell could not show continuous possession: (1) before September 16, 1993 by tacking on Tori and the Reas' possession because their suit for adverse possession of the same property was dismissed with prejudice on that date; and (2) after September 16, 1993 through December 31, 2002, when Branson had acquired all of Property A – a period of less than ten years – because once Branson, as a municipality, owned the property, title to public property cannot be claimed on the basis of adverse possession under § 516.090. We agree with these arguments.

The 1993 Lawsuit was dismissed with prejudice under Rule 67, governing dismissals of actions. In 1993, the version in effect of Rule 67.01, addressing voluntary dismissals, provided:

> A civil action may be dismissed by the plaintiff without prejudice without order of court any time prior to the introduction of evidence at the trial. After the introduction of evidence is commenced, a plaintiff may dismiss his action without prejudice only by leave of court or by written consent of the adverse party. Leave of court shall be freely granted when justice so

---

[10] As a practical matter, we note that Coverdell cannot show adverse possession based on his alleged possession only. He purchased the property in September 1999, and admitted by December 31, 2002 – only three years later – Branson had acquired or exclusively possessed all of Property A.

12

requires. **A party who has once so dismissed a civil action and thereafter files another civil action upon the same claim shall be allowed to dismiss the same without prejudice only** (1) upon filing a **stipulation** to that effect signed by the opposing party; or (2) **on order of the court** made on motion in which the ground for said dismissal shall be set forth.

Rule 67.01, Missouri Court Rules (1993) (emphasis added).[11]   Here, as this rule required, there was no stipulation that any of the dismissals were without prejudice, and the trial court clearly indicated the dismissal of the third suit was with prejudice.

A dismissal with prejudice pursuant to Rule 67.01 has the effect of an adjudication on the merits and bars further suit by the plaintiff.  *N. Port Dev. Co. v. Graff*, 763 S.W.2d 683, 685-86 (Mo. App. 1988); *Ritter v. Aetna Cas. & Sur. Co.*, 686 S.W.2d 563, 564 (Mo. App. 1985); *see* § 510.150 ("dismissal with prejudice operates as an adjudication upon the merits").[12]

Thus, as the third dismissal was with prejudice and effectively on the merits, Rule 67 operated to bar further suit by Tori and the Reas on their adverse possession claim as a matter of law.  *See N. Port Dev. Co.*, 763 S.W.2d as 685-86.  As of September 16, 1993, Tori and the Reas could no longer establish their claim, nor could Coverdell tack years of their alleged adverse possession before that date when they themselves were barred from

---

[11]   Since 1993, the same principles under Rules 67.01 through 67.03 have been rearranged under different numbers, and additional rules have been added.  *See* Rule 67, Missouri Court Rules (2018).

[12]   *See also* Rule 67.03 (in 1993 providing that "[a] dismissal with prejudice bars the assertion of the same cause of action or claim against the same party"); *Vilsick v. Standard Insulations, Inc.*, 926 S.W.2d 499, 501 (Mo. App. 1996) ("This rule extends res judicata principles to cases dismissed with prejudice and serves as a mechanism to terminate litigation"; however, "unlike the doctrine of res judicata, application of [then Rule 67.03] does not require a prior adjudication on the merits."); *Rice v. Taylor-Morley-Simon, Inc.*, 842 S.W.2d 926, 928-29 (Mo. App. 1992) (similar holding).

proving the same claim.  *See **Conduff***, 968 S.W.2d at 203 (tacking not allowed when claimant could not show at the time of prior possession that predecessors could satisfy the elements of adverse possession); *see also **Reynolds v. Brill***, 302 S.W.3d 716, 720 (Mo. App. 2010); ***Harris Land Dev., L.L.C. v. Fields***, 139 S.W.3d 275, 279 (Mo. App. 2004); ***Shuffit v. Wade***, 13 S.W.3d 329, 336-37 (Mo. App. 2000); ***Flowers***, 979 S.W.2d at 471-72; ***Brinner v. Huckaba***, 957 S.W.2d 491, 495-96 (Mo. App. 1997); ***Johnson Cty. Post No. 2513, Veterans of Foreign Wars, Inc. v. Jackson***, 519 S.W.2d 335, 337-38 (Mo. App. 1975).[13]  Consequently, Coverdell cannot tack the alleged possession of his predecessors in title before September 16, 1993.

Assuming *arguendo*, Coverdell could show adverse possession of Property A *after* September 16, 1993, he still falls short of proving such possession for the requisite ten-year period.  *See* § 516.010.  Coverdell admits Branson had acquired all remaining portions of Property A (not otherwise exclusively possessed) less than ten years later, by December 31, 2002.  After that date, title to public property cannot be claimed on the basis of adverse possession pursuant to § 516.090.  In pertinent part, this statute states:

> Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to this state.

---

[13]  We find further support for our decision in the general rule that "an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself or herself where predecessor … could not claim the land adversely.  An adverse claimant must take the predecessor's possession with all the infirmities attaching to it where he or she seeks to tack such possession to his or her own." 2 C.J.S., *Adverse Possession* § 156 (2018) (footnotes omitted); *see generally **Byrnes v. Scaggs***, 247 S.W.2d 826, 831 (Mo. 1952) (discussing when "minimum requirements of justice would demand that [grantee] step into the shoes of his grantor or predecessor in title").

***Id***.; *see **Rice***, 22 S.W.3d at 781.

We are unpersuaded by Coverdell's contrary argument. He argues that § 516.090, by its own terms, treats municipalities differently than the State. According to Coverdell, "while the specific use to which the property is placed may not be relevant if the State of Missouri is the owner, when the owner is a city or other municipality, such as the City of Branson, the land must be put to a public, pious or charitable use" and there is "no argument or evidence for how the use of the disputed property could conceivably be considered public, pious or charitable." In support of his argument, Coverdell relies exclusively on ***City of Gainesville v. Gilliland***, 718 S.W.2d 553 (Mo. App. 1986). In ***Gilliland***, however, this Court actually rejected a similar argument, and held that under § 516.090, a municipality's title to land could <u>not</u> be lost through adverse possession, regardless of whether the city owned land in proprietary or governmental capacity. ***Id***. at 564-66. We relied, in part, on the underlying rationale for the statute, enacted in 1865, as stated in ***Dudley v. Clark***, 164 S.W. 608 (Mo. 1914):

> Prior to that statute this state had, through its statutes, adopted the public policy of allowing the limitations to run against the state and municipalities. It was found to be a ruinous public policy, for under it school lands, roads, parks, streets, etc., were lost to the state and public through the laches or ignorance of the public or of officials representing it. Is it not learned at the fireside that what is everybody's business is nobody's business? To put a stop to that mischief was one of the main objects of that statute.

***Id***. at 612; ***Gilliland***, 718 S.W.2d at 564. Here, § 516.090 clearly applies to prohibit adverse possession of the land owned by Branson. *See **Gilliland***, 718 S.W.2d at 565; *see also **City of Pacific v. Ryan***, 28 S.W.2d 652, 654 (Mo. 1930); ***City of Poplar Bluff v. Knox***, 410 S.W.2d 100, 103 (Mo. App. 1966).

15

In sum, based on Coverdell's admissions that Branson exclusively possessed or acquired all of Property A by December 31, 2002 – less than ten years after September 16, 1993 – Coverdell cannot show his alleged adverse possession for the requisite ten-year period to support his claim. *See* § 516.010; ***Conduff***, 968 S.W.2d at 203. Coverdell, therefore, cannot prove adverse possession of Property A. *See **Conduff***, 968 S.W.2d at 203 (claimant's failure to prove even one of the elements of adverse possession will defeat his claim). Contrary to Coverdell's argument, there was a legal basis to grant summary judgment against him on his adverse possession claim. The trial court did not err in doing so. Point 1 is denied.

*Point 2 – Standing of All Parties*

Coverdell's second point contends the trial court erred by entering judgments in favor of HCW, Branson, Empire, and Central "because the trial court lacks authority and jurisdiction in that these parties lack standing and therefore the judgments in their favor are void." The law of the case, clearly established by our prior holdings in ***Empire II***, forecloses re-examination of this point.

"The doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." ***Am. Eagle Waste Indus., LLC v. St. Louis Cty.***, 379 S.W.3d 813, 825 (Mo. banc 2012); ***Williams v. Kimes***, 25 S.W.3d 150, 153 (Mo. banc 2000). A previous holding constitutes law of the case, precluding relitigation of issues on remand and subsequent appeal. ***Williams***, 25 S.W.3d at 154. The decision of a court is the law of the case for all points presented and decided, as well as for matters that arose prior to the first adjudication and could have been raised but were not. ***Id***.; *see also **Soderholm v. Nauman***, 466 S.W.3d

16

610, 618 (Mo. App. 2015) (this rule applies to matters decided by the appellate court's opinion, either directly or by implication). The doctrine of law of the case is necessary to ensure uniformity of decisions, protect the parties' expectations, and promote judicial economy. *Walton v. City of Berkeley*, 223 S.W.3d 126, 129 (Mo. banc 2007).

In previous appeals related to tracts of land included in the 2010 judgment, this Court has repeatedly rejected points and supporting arguments nearly identical to those Coverdell presents in Point 2 of the instant appeal. In *Empire II*, CEI challenged the standing of HCW, Empire, Branson, and lienholders. CEI argued that "[t]he trial court erred in rendering any judgment in this case in favor of Empire, Branson, HWC [sic], U.S. Bank and Arvest because the trial court lacked authority and jurisdiction to decide this matter in that Empire, Branson, HCW, U.S. Bank and Arvest lacked standing as parties in this case and therefore the judgment is void." *Empire II*, 484 S.W.3d at 19. We denied CEI's point primarily because "the supporting argument fail[ed] to present an understandable explanation of or test for standing supported by citations to authority that are linked to claimed deficiencies on the part of Respondents." *U.S. Bank*, 483 S.W.3d at 397-98; *see Empire II*, 484 S.W.3d at 19-20. In the 2011 companion case, we denied essentially the same point and supporting arguments, again presented by CEI, for the same reasons articulated in *Empire II*. *U.S. Bank*, 483 S.W.3d at 397-98.[14]

Here, like CEI in *Empire II* and the 2011 companion case, Coverdell yet again raises a standing challenge with a deficient point that "focuses on behavior of [Empire,

---

[14] As we acknowledged in our disposition of the appeal, CEI challenged HCW's standing in *Empire II* despite the fact that HCW was not yet a party to the underlying case. *Id*. at 5 n.4. HCW was a party to the 2011 companion case. On appeal of that case, we rejected CEI's claim that HCW lacked standing. *U.S. Bank*, 483 S.W.3d at 397-98.

17

Branson, HCW, and lienholders] that occurred before the 2010 Judgment was entered." *Empire II*, 484 S.W.3d at 19. Because this appeal involves substantially the same issues and facts as the prior appeals in *Empire II* and the 2011 companion case, our decisions upholding the standing of Branson, Empire, and parties claiming an interest through them, such as Central and HCW, constitute law of the case.[15]

Despite this Court's clear holdings, Coverdell contends that his rehashing of settled arguments in Point 2 is "not prohibited by the law of the case doctrine[.]" We disagree. It is true that "[t]he question of a party's standing can be raised at any time[.]" *State ex rel. Mathewson v. Bd. of Election Comm'rs of St. Louis Cty.*, 841 S.W.2d 633, 634 (Mo. banc 1992). However, Missouri appellate courts have not hesitated to apply the doctrine of law of the case to preclude re-examination of decided standing issues. *See Nance v. Maxon Elec., Inc.*, 425 S.W.3d 926, 931 (Mo. App. 2014); *In re Estate of Corbin*, 166 S.W.3d 102, 107-08 (Mo. App. 2005). Coverdell's claim was raised and rejected in previous appeals involving substantially the same facts, issues, and parties. Accordingly, we conclude that Branson, Empire, Central, and HCW do not lack standing.

Coverdell "cannot have multiple bites at the apple in attempting to determine this issue favorably." *Am. Eagle*, 379 S.W.3d at 825. Because Coverdell's claim of error

---

[15] Although not strictly necessary to our decision, we note that our opinion in *Empire II* did not reject challenges to standing based on briefing deficiencies alone. In denying Coverdell's motion to strike U.S. Bank and Arvest as parties, we adopted a broad interpretation of § 527.150, holding that a party has "a legally protectable interest sufficient to bring a suit to quiet title if that party would stand to acquire or lose their stake in the property by the court's judgment." *Empire II*, 484 S.W.3d at 23. Consequently, we found that lienholders, such as U.S. Bank, Arvest, and their successors in interest, hold an "interest" sufficient to establish standing in an action under § 527.150.1. *Empire II*, 484 S.W.3d. at 24. This reasoning lends further support to our conclusion that Central and HCW have standing in this case.

18

amounts to nothing more than an expression of disagreement with appellate determinations that are the law of the case, his point is without merit. Point 2 is denied.

*Point 3 – Intervention of HCW*

Coverdell's third point contends the trial court erred by "permitting [HCW] to intervene in the litigation because their intervention is unsupported and contrary to the evidence and constitutes an erroneous application of the law[.]"[16] Coverdell contends HCW's motion to intervene should not have been granted because: (1) the motion was untimely; (2) they lack a direct ownership interest in the property; (3) their claims are preserved in a collateral action; and (4) their interests are protected by existing parties. Finding that none of these contentions have merit, we address each in turn.

This Court will affirm the trial court's decision concerning intervention as a matter of right unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Johnson v. State*, 366 S.W.3d 11, 20 (Mo. banc 2012); *see also* *Myers v. City of Springfield*, 445 S.W.3d 608, 611 (Mo. App. 2014). Intervention should generally be allowed with considerable liberality. *Johnson*, 366 S.W.3d at 20.

Rule 52.12(a) governs intervention as of right. In the absence of a statute conferring an unconditional right to intervene, Rule 52.12(a)(2) requires an entity seeking to intervene as a matter of right to file a timely motion and demonstrate: "(1) an interest relating to the

---

[16] Coverdell combines into the same point relied on a substantial-evidence challenge and a misapplication-of-law challenge. These are distinct claims of error that should be presented in separate points. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Failure to do so preserves nothing for appellate review. *Id.*; *see J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 n.10 (Mo. banc 2014); Rule 84.04. We grant review *ex gratia*, but again caution appellate counsel to follow the mandatory dictates of Rule 84.04.

property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *State ex rel. Nixon v. Am. Tobacco Co. Inc.*, 34 S.W.3d 122, 127 (Mo. banc 2000) (citation omitted). "The proposed intervenor carries the burden of establishing the presence of all three elements required for intervention as a matter of right." *Id*. "When an applicant satisfies these elements, however, the right to intervene is absolute and the motion to intervene may not be denied." *Id*. The rule "should be liberally construed to permit broad intervention[.]" *Allred v. Carnahan*, 372 S.W.3d 477, 482 (Mo. App. 2012) (citation omitted); *see State ex rel. St. Joseph, Mo. Ass'n of Plumbing, Heating and Cooling Contrators, Inc. v. City of St. Joseph*, 579 S.W.2d 804, 806 (Mo. App. 1979).

Before we address Coverdell's specific claims of error regarding HCW's intervention, we note that Coverdell's intervention argument as a whole is unpersuasive because he posited the *opposite* argument to this Court in *Empire II*. *See Id*. at 26-27. Coverdell contended in his *Empire II* appellate brief that the trial court erred because it "failed to permit an indispensable party to intervene in this litigation[.]" In support of his point, Coverdell alleged that "various corporate entities" should have been permitted to intervene because "[i]ntervention of interested parties was expressly permitted by this Court in [*Empire I*]. … [T]he trial court was required to order that these entities … be made parties to the suit, based on the representations that they have an interest in the real estate which is the subject matter of the instant litigation." We denied the point on appeal because Coverdell failed to expressly name the alleged "indispensable" party, specify whether such a party was asserting a present claim to the property, or provide citations to

20

the record in support of his claims. *Empire II*, 484 S.W.3d at 28-29. Coverdell now takes the opposite position by arguing that a similarly situated corporate entity *should not* have been allowed to intervene. It is well settled that this Court will not permit a party to take an inconsistent position or complain on appeal about an alleged error which he invited by his own conduct. *See Klineline v. Klineline*, 481 S.W.3d 551, 554 (Mo. App. 2015); *Ard v. Shannon Cty. Comm'n*, 424 S.W.3d 468, 476 (Mo. App. 2014).

Coverdell's point first asserts that HCW's intervention was erroneous because the motion was untimely. He contends that HCW's request to intervene in August 2016 was "categorically unreasonable" because HCW acquired an interest in the property at issue in 2003 – approximately 13 years earlier, during the same year the underlying case commenced, and long before "numerous judgments had been entered in the litigation."

It is within a trial court's discretion to determine whether a motion to intervene is timely. *Frost v. White*, 778 S.W.2d 670, 673 (Mo. App. 1989). When considering the issue of timeliness, the trial court must determine both "whether substantial justice mandates the allowance of intervention [and] whether existing parties to the case will be prejudiced if intervention is permitted." *Id*.

HCW argues that their intervention was not untimely because the adverse possession claim on which it intervened had not been filed until 2012, and there was no need to intervene prior to 2016, as HCW was a defendant in the 2011 companion case. Accordingly, HCW argues that when the 2011 case was stayed by this Court, their interest was no longer sufficiently protected, and substantial justice then mandated intervention. HCW's arguments are well taken. Coverdell does not explain how he was prejudiced by HCW's intervention. Moreover, our Supreme Court has upheld the grant of motions to

21

intervene following both entry of judgment and remand to the trial court. *See Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302, 303 (Mo. banc 1991); *see also Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 836-37 (Mo. banc 2013) (the intervenors were properly permitted to intervene despite appellant's argument that the underlying litigation "had been proceeding for years"). Considering the complex procedural posture of this case and closely related litigation, we cannot say that HCW's intervention here was untimely.

Coverdell next contends HCW's interest relating to the subject of the action is insufficient. An interest, for purposes of intervention as of right, "means a concern, more than mere curiosity, or academic or sentimental desire." *In re Liquidation of Prof'l Med. Ins. Co.*, 92 S.W.3d 775, 778 (Mo. banc 2003). "An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment." *Am. Tobacco Co.*, 34 S.W.3d at 128. When a party claims intervention as a matter of right, they are asserting that they may be legally bound or prejudiced by any judgment entered in the case. *State ex rel. Reser v. Martin*, 576 S.W.2d 289, 290-91 (Mo. banc 1978).

HCW claims, and the trial court found, "an interest in the real estate at issue in this action by virtue of the Master Lease dated October 7, 2003 and its related subleases[.]" Pursuant to the 2003 Master Lease, Branson leased certain real estate to HCW Development Company, LLC, including property which is the subject of this case. HCW has invested more than $150 million in developing the property at issue. Despite this substantial investment, Coverdell contends that HCW does not possess an interest

22

sufficient for intervention because HCW's leasehold interest is not "an immediate and direct ownership interest in the disputed property."

Coverdell points us to no authority in support of the contention that a fee ownership interest is required for intervention in a quiet title action. Indeed, in *Empire II* we held that "[c]ontrary to Coverdell's contention … that sections 527.150.1 and .2 create a narrow statutory scheme to determine title to real estate among the competing potential owners" of property, the quiet title statute is very broad, "providing that almost any issue concerning an interest in realty may be decided in a quiet title action." *Id*. at 23-24 (internal quotations and citation omitted). Coverdell's argument is also refuted by *Toombs v. Riley*, 591 S.W.2d 235 (Mo. App. 1979). In *Toombs*, the Court held that a prior grantor of the land at issue in a quiet title dispute was entitled to intervene as a matter of right under Rule 52.12(a)(2). In doing so, the Court explained that the "interest" required for intervention under the rule "is a practical direction for the disposition of litigation to encompass as many presumptively affected persons as may be compatible with the avoidance of multiple suits and the demands of due process." *Id*. at 236. The trial court properly found that HCW has sufficient interest to intervene as a matter of right.

Given that HCW has an interest in the pending litigation, we now turn to whether the disposition of the underlying action "may as a practical matter impair or impede [HCW's] ability to protect that interest." Rule 52.12(a). Coverdell contends that HCW's preserved claims in the 2011 companion case sufficiently protect its interest. On appeal of the 2011 companion case, however, we recognized that the overlap between the cases is "significant" and "[i]n both cases, Coverdell claimed ownership of [Property A] by adverse possession." *U.S. Bank*, 483 S.W.3d at 403-04. We also acknowledged that a "significant

23

clash" exists between the summary judgments in the companion case and the judgments entered in *Empire II*. *U.S. Bank*, 483 S.W.3d at 404. The 2011 companion case was stayed for the very reason that its outcome could be affected by the ultimate disposition of the instant case. The trial court did not err by inferring that HCW's ability to protect their interest could be practically impeded if they were not permitted to actively participate in the instant case.

Finally, Coverdell contends that Branson and Empire adequately protect HCW's interests. However, it is well settled that the fact that two parties are on the same side of the dispute is not enough, in and of itself, to preclude intervention. *Allred*, 372 S.W.3d at 486. Additionally, the interests of the intervenor and existing parties need not be wholly adverse. *Underwood v. St. Joseph Bd. of Zoning Adjustment*, 368 S.W.3d 204, 210 (Mo. App. 2012). Rather, determination of whether a proposed intervenor's interest is adequately represented by an original party to an action usually turns on whether there is an identity, or divergence of interest, between the proposed intervenor and the party. *Allred*, 372 S.W.3d at 486-87.

As a lessee and developer, HCW has a uniquely critical interest in seeing that the litigation is concluded in a timely fashion. HCW is the only party to the case that has an interest in the property at issue through the Master Lease, and it has a substantial economic investment in the property. Therefore, HCW's interest is divergent with those of the existing parties. In accordance with this unique standing, HCW demonstrated a more aggressive representation strategy than the other parties by filing its motion for summary judgment soon after intervening. Where the first two prerequisites for intervention as of right are met, the third element requires only a "minimal showing" that the representation

24

may be inadequate.  *Toombs*, 591 S.W.2d at 237.  Under these circumstances, HCW has demonstrated the "minimal showing" that the other parties' representation may be comparatively inadequate.

HCW timely moved to intervene and satisfied the requisite elements of intervention as of right.  Consequently, their right to intervene was absolute and could not be denied. *Am. Tobacco Co.*, 34 S.W.3d at 127; *Allred*, 372 S.W.3d at 488.  The trial court did not err in granting HCW's motion for leave to intervene.  Point 3 is denied.

*Point 4 – Final Judgment*

Coverdell's fourth point claims error in the trial court's entry of final judgment. The trial court entered final judgment as to all parties following the grant of summary judgment in favor of HCW and against Coverdell on his adverse possession claim. Coverdell contends the entry of final judgment is "improper" and "denies [Coverdell] of his due process rights" because Empire, Branson, and Central "are not moving parties entitled to judgment as a matter of law and their joint motion does not comply with the Missouri Rules of Civil Procedure applicable to summary judgment motions."  Coverdell's failure to show prejudice stemming from the trial court's entry of final judgment is fatal to his argument under this point.

The main thrust of Coverdell's argument is that because Empire, Branson, and Central declined to either file their own motions for summary judgment or join in HCW's motion, they were not entitled to relief through the trial court's entry of final judgment. This argument is without merit because it disregards the preclusive effect of the trial court's grant of HCW's motion for summary judgment.  As discussed above in Point 1, the trial court properly found that, as a matter of law, Coverdell cannot establish the elements

necessary for a finding of adverse possession of Property A. Due to the unique procedural posture of this case together with the nature of quiet title actions, such a finding was entirely dispositive of the sole remaining claim in the case, thereby terminating the litigation as to all parties.

In *Empire II*, this Court mandated that the case be remanded to the trial court for the second time "for further proceedings *limited* to the resolution of *Coverdell's claim* for adverse possession of [Property A]." *Id*. at 34 (emphasis added). "[W]here an appellate court remands with *specific directions*, the trial court is duty-bound to render a judgment that strictly conforms to that mandate. The court is without power to modify, alter, amend, or otherwise depart from those directions." *Pope v. Ray*, 298 S.W.3d 53, 57 (Mo. App. 2009) (emphasis in original; internal citations omitted). Per the directive of our narrow remand, the proceedings were set to terminate upon the determination of the merits of Coverdell's adverse possession claim.

As the party claiming ownership by adverse possession, the burden of proof was on Coverdell. *Watson*, 298 S.W.3d at 526. Moreover, we reiterated in *Empire I* that in quiet title actions "[t]he claimant must rely upon the strength of his own title and not upon the weaknesses in the title of his opponent." *Empire I*, 344 S.W.3d at 852-53; *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 395 (Mo. App. 1984). Because Coverdell had to rely exclusively on the strength of his own claim of ownership to prevail, the trial court's finding that he was unable to demonstrate the requisite adverse possession elements was fatal to the entirety of his claim, regardless of which adverse party moved for judgment. The trial court's grant of HCW's motion for summary judgment resolved Coverdell's claim for adverse possession of Property A, thereby fully satisfying *Empire II*'s mandate and

disposing of the only claim remaining in the case. The finding against Coverdell precluded further action in excess of *Empire II*'s directive. *See Pope*, 298 S.W.3d at 57. Thus, the trial court was free to enter final judgment as to all parties.

In arguing that the trial court was not permitted to enter final judgment, Coverdell relies on the premise that the joint motion for entry of final judgment was, in effect, a motion for summary judgment intended to "circumvent the legal requirements applicable to summary judgment proceedings[.]" This argument is unpersuasive. HCW's motion for summary judgment was thoroughly briefed, argued, considered by the trial court, and responded to by all parties. Coverdell fails to articulate any manner in which he may have proceeded differently had Empire, Branson, or Central filed individual motions for summary judgment or joined in HCW's motion. Nor has he suggested, on appeal or during any stage of the litigation below, any way such a difference in procedure could have altered the final outcome of the case. Indeed, the foregoing analysis affirms that Branson, Empire, and Central's joint motion for entry of final judgment was precisely that – a motion to simply "make clear that the Judgment and the legal effect thereof fully resolves and disposes of Count II in its entirety, which is the only Count that remained pending following the November 17, 2015 Mandate, and thus the matter is ripe for appeal as to all parties and issues before the Court."

Even assuming, *arguendo*, it would have been procedurally preferable for the trial court to require Branson, Empire, and Central to either file their own motions for summary judgment or formally join HCW's motion, "we are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Surrey Condo. Ass'n, Inc. v. Webb*, 163 S.W.3d 531, 536 (Mo. App. 2005).

27

"[A]ppellate review is for prejudice, not mere error." ***Heritage Warranty Ins., RRG, Inc. v. Swiney***, 244 S.W.3d 290, 294 (Mo. App. 2008). Rule 84.13(b) does not permit this Court to reverse a trial court's judgment unless we find "that error was committed by the trial court against the appellant *materially affecting the merits of the action*." ***Id***. (emphasis added). After more than 15 years of protracted litigation, it is evident that Coverdell cannot establish ownership of Property A by deed, adverse possession, or otherwise. The trial court did not err in entering final judgment in favor of HCW, Empire, Branson, and Central. Point 4 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR